# PATTON ET AL. *v.* UNITED STATES.

No. 53.   Argued February 25, 1930.—Decided April 14, 1930.

*Mr. Claude Nowlin,* with whom *Messrs. Jacob R. Spielman* and *M. M. Thomas* were on the brief, for Patton et al.

*Solicitor General Hughes,* with whom *Messrs. George C. Butte,* Special Assistant to the Attorney General, *Robert P. Reeder,* and *Erwin N. Griswold* were on the brief, for the United States.

284

Mr. Justice Sutherland delivered the opinion of the Court.

The defendants (plaintiffs in error) were indicted in a federal district court, charged with conspiring to bribe a federal prohibition agent, a crime punishable by imprisonment in a federal penitentiary for a term of years. A jury of twelve men was duly impaneled. The trial began on October 19, 1927, and continued before the jury of twelve until October 26 following, at which time one of the jurors, because of severe illness, became unable to serve further as a juror. Thereupon it was stipulated in open court by the government and counsel for defendants, defendants personally assenting thereto, that the trial should proceed with the remaining eleven jurors. To this stipulation the court consented after stating that the defendants and the government both were entitled to a constitutional jury of twelve, and that the absence of one juror would result in a mistrial unless both sides should waive all objections and agree to a trial before the remaining eleven jurors. Following this statement, the stipulation was renewed in open court by all parties. During the colloquy counsel for defendants stated that he had personally conferred with all counsel and with each of the defendants individually, and it was the desire of all to finish the trial of the case with the eleven jurors

if the defendants could waive the presence of the twelfth juror.

The trial was concluded on the following day, and a verdict of guilty was rendered by the eleven jurors. Each of the defendants was sentenced to terms of imprisonment in the penitentiary on the several counts of the indictment. An appeal was taken to the circuit court of appeals upon the ground that the defendants had no power to waive their constitutional right to a trial by a jury of twelve persons.

The court below, being in doubt as to the law applicable to the situation thus presented, and desiring the instruction of this court, has certified the following question:

"After the commencement of a trial in a Federal Court before a jury of twelve men upon an indictment charging a crime, punishment for which may involve a penitentiary sentence, if one juror becomes incapacitated and unable to further proceed with his work as a juror, can defendant or defendants and the Government through its official representative in charge of the case consent to the trial proceeding to a finality with eleven jurors, and can defendant or defendants thus waive the right to a trial and verdict by a constitutional jury of twelve men?"

The question thus submitted is one of great importance, in respect of which there are differences of opinion among the various lower federal and state courts; but which this court thus far has not been required definitely to answer. There are, however, statements in some of our former opinions, which, if followed, would require a negative answer. These are referred to and relied upon by the defendants.

The federal Constitution contains two provisions relating to the subject. Article III, Section 2, Clause 3 provides:

" The trial of all crimes, except in cases of impeach-
ment, shall be by jury; and such trial shall be held in
the State where the said crimes shall have been com-
mitted; but when not committed within any State, the
trial shall be at such place or places as the Congress may
by law have directed."

The Sixth Amendment provides:

" In all criminal prosecutions, the accused shall enjoy
the right to a speedy and public trial, by an impartial
jury of the State and district wherein the crime shall
have been committed, which district shall have been pre-
viously ascertained by law, and to be informed of the
nature and cause of the accusation; to be confronted with
the witnesses against him; to have compulsory process
for obtaining witnesses in his favor, and to have the as-
sistance of counsel for his defense."

Passing for later consideration the question whether
these provisions, although varying in language, should
receive the same interpretation, and whether taken to-
gether or separately the effect is to guaranty a right or
establish a tribunal as an indispensable part of the gov-
ernment structure, we first inquire what is embraced by
the phrase " trial by jury." That it means a trial by
jury as understood and applied at common law, and in-
cludes all the essential elements as they were recognized
in this country and England when the Constitution was
adopted, is not open to question. Those elements were—
(1) that the jury should consist of twelve men, neither
more nor less; (2) that the trial should be in the presence
and under the superintendence of a judge having power
to instruct them as to the law and advise them in
respect of the facts; and (3) that the verdict should be
unanimous.

As to the first of these requisites, it is enough to cite
*Thompson* v. *Utah*, 170 U. S. 343, 350, where this court

reversed the conviction of a defendant charged with grand larceny by a jury of eight men, saying:

" It must consequently be taken that the word 'jury' and the words ' trial by jury ' were placed in the Constitution of the United States with reference to the meaning affixed to them in the law as it was in this country and in England at the time of the adoption of that instrument; and that when Thompson committed the offence of grand larceny in the Territory of Utah—which was under the complete jurisdiction of the United States for all purposes of government and legislation—the supreme law of the land required that he should be tried by a jury composed of not less than twelve persons."

The second requisite was expressly dealt with in *Capital Traction Company* v. *Hof*, 174 U. S. 1, 13–16, where it is said:

" ' Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence. This proposition has been so generally admitted, and so seldom contested, that there has been little occasion for its distinct assertion."

The third requisite was held essential in *American Publishing Company* v. *Fisher*, 166 U. S. 464, 468; *Springville* v. *Thomas*, 166 U. S. 707; *Maxwell* v. *Dow*, 176 U. S. 581, 586.

These common law elements are embedded in the constitutional provisions above quoted, and are beyond the authority of the legislative department to destroy or abridge. What was said by Mr. Justice Brewer in *American Publishing Company* v. *Fisher, supra,* with respect to the requirement of unanimity, is applicable to the other elements as well:

" Whatever may be true as to legislation which changes any mere details of a jury trial, it is clear that a statute which destroys this substantial and essential feature thereof is one abridging the right."

Any such attempt is vain and ineffectual, whatever form it may take. See *In re Debs,* 158 U. S. 564, 594.

The foregoing principles, while not furnishing a precise basis for an answer to the question here presented, have the useful effect of disclosing the nature and scope of the problem, since they demonstrate the unassailable integrity of the establishment of trial by jury in all its parts, and make clear that a destruction of one of the essential elements has the effect of abridging the right in contravention of the Constitution. It follows that we must reject *in limine* the distinction sought to be made between the effect of a complete waiver of a jury and consent to be tried by a less number than twelve, and must treat both forms of waiver as in substance amounting to the same thing. In other words, an affirmative answer to the question certified logically requires the conclusion that a person charged with a crime punishable by imprisonment for a term of years may, consistently with the constitutional provisions already quoted, waive trial by a jury of twelve and consent to a trial by any lesser number, or by the court without a jury.

We are not unmindful of the decisions of some of the state courts holding that it is competent for the defendant to waive the continued presence of a single juror who has become unable to serve, while at the same time deny-

ing or doubting the validity of a waiver of a considerable number of jurors, or of a jury altogether. See, for example, *State* v. *Kaufman,* 51 Iowa 578, 580, with which compare *State* v. *Williams,* 195 Iowa 374; *Commonwealth ex rel. Ross* v. *Egan,* 281 Pa. 251, 256, with which compare *Commonwealth* v. *Hall,* 291 Pa. 341. But in none of these cases are we able to find any persuasive ground for the distinction.

Other state courts, with, we think, better reason, have adopted a contrary view. In *State* v. *Baer,* 103 Ohio St. 585, a person charged with manslaughter had been convicted by eleven jurors. The trial began with a jury of twelve, but, one of the jurors becoming incapable of service, the trial was concluded with the remaining eleven. In disposing of the case, the state supreme court thought it necessary to consider the broad question (p. 589): ". . . whether the right of trial by jury, as guaranteed by Sections 5 and 10 of the Bill of Rights, can be waived." After an extensive review of the authorities and a discussion of the question on principle, the court concluded that since it was permissible for an accused person to plead guilty and thus waive *any* trial, he must necessarily be able to waive a *jury* trial.

In *Jennings* v. *State,* 134 Wis. 307, 309, where, again, a juror during the trial was excused from service because of illness, and the case was continued and concluded before the remaining eleven, the Supreme Court of Wisconsin also disposed of the case as involving the power of the defendant to waive a jury altogether, saying:

" It seems necessarily to follow that if a person on trial in a criminal case has no power to waive a jury he has no right to be tried by a less number than a common-law jury of twelve, and when he puts himself on the country it requires a jury of twelve to comply with the demands of the constitution. The fact that the jury in

the instant case had the required number of twelve up to the stage in the trial when the cause was to be submitted to them under the instructions of the court cannot operate to satisfy the constitutional demand. At this point the trial was incomplete, for the very essential duty of having the jury deliberate upon the evidence and agree upon a verdict respecting defendant's guilt or innocence remained unperformed. Without the verdict of a jury of twelve it cannot be said to be a verdict of the jury required by the constitution. Such a verdict is illegal and insufficient to support a judgment."

We deem it unnecessary to cite other cases which deal with the problem from the same point of view.

A constitutional jury means twelve men as though that number had been specifically named; and it follows that when reduced to eleven it ceases to be such a jury quite as effectively as though the number had been reduced to a single person. This conclusion seems self evident, and no attempt has been made to overthrow it save by what amounts to little more than a suggestion that by reducing the number of the jury to eleven or ten the infraction of the Constitution is slight, and the courts may be trusted to see that the process of reduction shall not be unduly extended. But the constitutional question cannot thus be settled by the simple process of ascertaining that the infraction assailed is unimportant when compared with similar but more serious infractions which might be conceived. To uphold the voluntary reduction of a jury from twelve to eleven upon the ground that the reduction—though it destroys the jury of the Constitution—is only a slight reduction, is not to interpret that instrument but to disregard it. It is not our province to measure the extent to which the Constitution has been contravened and ignore the violation, if in our opinion, it is not, relatively, as bad as it might have been.

We come, then, to the crucial inquiry: Is the effect of the constitutional provisions in respect of trial by jury to establish a tribunal as a part of the frame of government, or only to guaranty to the accused the right to such a trial? If the former, the question certified by the lower court must, without more, be answered in the negative.

Defendants strongly rely upon the language of this court in *Thompson* v. *Utah, supra,* at page 353:

" It is said that the accused did not object, until after verdict, to a trial jury composed of eight persons, and therefore he should not be heard to say that his trial by such a jury was in violation of his constitutional rights. It is sufficient to say that it was not in the power of one accused of felony, by consent expressly given or by his silence, to authorize a jury of only eight persons to pass upon the question of his guilt. The law in force, when this crime was committed, did not permit any tribunal to deprive him of his liberty, except one constituted of a court and a jury of twelve persons."

But this statement, though positive in form, is not authoritative. The case involved the validity of a statute dispensing with the common law jury of twelve and providing for trial by a jury of eight. There was no contention that the defendant, Thompson, had consented to the trial, but only that he had not objected until after verdict. The effect of an express consent on his part to a trial by a jury of eight was not involved—indeed he had been silent only under constraint of the statute—and what the court said in respect of that matter is, obviously, an *obiter dictum.*

Defendants also cite as supporting their contention two decisions of federal circuit courts of appeal, namely, *Low* v. *United States,* 169 Fed. 86; and *Dickinson* v. *United States,* 159 Fed. 801.

In the first of these cases the opinion, rendered by Judge Lurton, afterwards a justice of this court, definitely holds that the waiver of trial of a crime by jury involves setting aside the tribunal constituted by law for that purpose and the substitution by consent of one unknown to the law, and that this cannot be done by consent of the accused and the district attorney. "Undoubtedly," the opinion concludes, "the accused has a right to waive everything which pertains to form and much which is of the structure of a trial. But he may not waive that which concerns both himself and the public, nor any matter which involves fundamentally the jurisdiction of the court. The jurisdiction of the court to pronounce a judgment or conviction for crime, when there has been a plea of not guilty, rests upon the foundation of a verdict by a jury. Without that basis the judgment is void." This is strong language from a judge whose opinion is entitled to great respect.

In the second case, involving the completion of a trial by consent with a jury of eleven persons, substantially the same was held; but in a scholarly and thoughtful dissenting opinion, Judge Aldrich reviews the common law practice upon the subject antedating the Constitution, and in the course of his opinion, after referring to Article III, Section 2, and the Sixth Amendment, says (pp. 813–814, 820–821):

" The aim of the constitutional safeguards in question is a full, fair, and public trial, and one which shall reasonably and in all substantial ways safeguard the interests of the state and the life and liberty of accused parties. Whether the idea is expressed in words or not, as is done in some of the bills of rights and constitutions, a free and fair trial only means a trial as free and fair as the lot of humanity will admit.

"All will doubtless agree, at least the unquestioned authority is that way, that these protective provisions of

the Constitution are not so imperative that an accused shall be tried by jury when he desires to plead guilty; or that his trial, in the event of trial, shall be held invalid for want of due process of law, based upon the ground that he was not confronted with his witnesses when he had waived that constitutional right and consented to the use of depositions; or because he had not had compulsory process for obtaining witnesses in his favor when he had waived that; or because he had not had the assistance of counsel when he had intelligently refused such constitutional privilege and insisted upon the right to go to trial without counsel; or upon the ground that he had not had a speedy trial when he had petitioned the court for delay; or that his trial was not public when he had consented to, or silently acquiesced in, a trial in a courthouse with a capacity for holding only 12 members of the public rather than 1200.

" Beyond question, the right of an accused in a case like this to have 12 jurors throughout is so far absolute as a constitutional right that he may have it by claiming it, or even by withholding consent to proceed without that number, and doubtless, under a constitutional government like ours, the interests of the community so far enter into any incidental departure from that number, in the course of the trial, as to require the discretionary approval of the court, and that the proper representative of the government should join the accused in consent."

. .        .        .        .        .        .

" It is probable that the history and debates of the constitutional convention will not be found to sustain the idea that the constitutional safeguards in question were in any sense established as something necessary to protect the state or the community from the supposed danger that accused parties would waive away the interest which the government has in their liberties, and go to jail.

"There is not now, and never was, any practical danger of that. Such a theory, at least in its application to modern American conditions, is based more upon useless fiction than upon reason. And when the idea of giving countenance to the right of waiver, as something necessary to a reasonable protection of the rights and liberties of accused, and as something intended to be practical and useful in the administration of the rights of the parties, has been characterized as involving innovation 'highly dangerous,' it would, as said by Judge Seevers in State v. Kaufman, 51 Iowa, 578, 581, 2 N. W. 275, 277, 33 Am. Rep. 148, 'have been much more convincing and satisfactory if we had been informed why it would be highly dangerous.'"

. . . . . .

"Traced to its English origin, it would probably be found, so far as the right of waiver was there withheld from accused parties, that in a very large sense the reason for it was that conviction of crime, under the old English system, operated to outlaw and to attaint the blood and to work a forfeiture of official titles of inheritance, thus affecting the rights of third parties.

"In every substantial sense our constitutional provisions in respect to jury trials in criminal cases are for the protection of the interests of the accused, and as such they may, in a limited and guarded measure, be waived by the party sought to be benefited."

The record of English and colonial jurisprudence antedating the Constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the King and the arbitrary or partial judgment of the

court. Thus Blackstone, who held trial by jury both in civil and criminal cases in such esteem that he called it " the glory of the English law," nevertheless looked upon it as a " privilege," albeit " the most transcendent privilege which any subject can enjoy." Book III, p. 379. And Judge Story, writing at a time when the adoption of the Constitution was still in the memory of men then living, speaking of trial by jury in criminal cases said:

" When our more immediate ancestors removed to America, they brought this great *privilege* with them, as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our State constitutions as a fundamental *right*, and the Constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms." 2 Story on the Constitution, § 1779.

In the light of the foregoing it is reasonable to conclude that the framers of the Constitution simply were intent upon preserving the right of trial by jury primarily for the protection of the accused. If not, and their intention went beyond this and included the purpose of establishing the jury for the trial of crimes as an integral and inseparable part of the court, instead of one of its instrumentalities, it is strange that nothing to that effect appears in contemporaneous literature or in any of the debates or innumerable discussions of the time. This is all the more remarkable when we recall the minute scrutiny to which every provision of the proposed Constitution was subjected. The reasonable inference is that the concern of the framers of the Constitution was to make clear that the right of trial by jury should remain inviolable, to which end no language was deemed too imperative. That this was the purpose of the Third Article is rendered

highly probable by a consideration of the form of expression used in the Sixth Amendment.

" In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ."

This provision, which deals with trial by jury clearly in terms of privilege, although occurring later than that in respect of jury trials contained in the original Constitution, is not to be regarded as modifying or altering the earlier provision; and there is no reason for thinking such was within its purpose. The first ten amendments and the original Constitution were substantially contemporaneous and should be construed *in pari materia*. So construed, the latter provision fairly may be regarded as reflecting the meaning of the former. In other words, the two provisions mean substantially the same thing; and this is the effect of the holding of this court in *Callan* v. *Wilson*, 127 U. S. 540, 549, where it is said:

"And we do not think that the amendment was intended to supplant that part of the third article which relates to trial by jury. There is no necessary conflict between them."

Upon this view of the constitutional provisions we conclude that Article III, Section 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement.

But the question remains whether the court is empowered to try the case without a jury; that is to say, whether Congress has vested jurisdiction to that end. We think it has, although some of the state, as well as some of the federal, decisions suggest a different conclusion.

By the Constitution, Article III, Section 1, the judicial power of the United States is vested in the Supreme Court and such inferior courts as Congress may from time to

time ordain and establish. In pursuance of that authority, Congress, at an early day, established the district and circuit courts, and by § 24 of the Judicial Code (U. S. Code, Title 28, § 41 (2)), the circuit courts having been abolished, expressly conferred upon the district courts jurisdiction " of all crimes and offenses cognizable under the authority of the United States." This is a broad and comprehensive grant, and gives the courts named power to try every criminal case cognizable under the authority of the United States, subject to the controlling provisions of the Constitution. In the absence of a valid consent the district court cannot proceed except with a jury, not because a jury is necessary to its jurisdiction, but because the accused is entitled by the terms of the Constitution to that mode of trial. Since, however, the right to a jury trial may be waived, it would be unreasonable to leave the court powerless to give effect to the waiver and itself dispose of the case. We are of opinion that the court has authority in the exercise of a sound discretion to accept the waiver, and, as a necessary corollary, to proceed to the trial and determination of the case with a reduced number or without a jury; and that jurisdiction to that end is vested by the foregoing statutory provisions. The power of waiver being established, this is the clear import of the decision of this court in *Schick* v. *United States,* 195 U. S. 65, 70–71.

"By section 563, Rev. Stat., [superseded by § 24, Judicial Code] the District Courts are given jurisdiction ' of all crimes and offenses cognizable under the authority of the United States, committed within their respective districts, or upon the high seas, the punishment of which is not capital.' There is no act of Congress requiring that the trial of all offenses shall be by jury, *and a court is fully organized and competent for the transaction of business without the presence of a jury."*

See also *In re Belt,* 159 U. S. 95, and *Riddle* v. *Dyche,* 262 U. S. 333, both of which are out of harmony with the notion that the presence of a jury is a constitutional prerequisite to the jurisdiction of the court in a criminal case. The first of these cases involved the validity of an act of Congress authorizing waiver of a jury in criminal cases in the District of Columbia. The Court of Appeals of that District upheld the statute in *Belt* v. *United States,* 4 D. C. App. Cas. 25. Leave was asked of this court to file a petition for writ of *habeas corpus.* Upon this application, the question to be answered was (p. 97):

" Does the ground of this application go to the jurisdiction or authority of the Supreme Court of the District, or rather is it not an allegation of mere error? If the latter, it cannot be reviewed in this proceeding. *In re Schneider,* 148 U. S. 162, and cases cited." After reviewing authorities, it was held that the Supreme Court of the District had jurisdiction to determine the validity of the act which authorized the waiver, and that its action could not be reviewed on *habeas corpus.*

In the second case, Riddle, on *habeas corpus,* assailed a conviction in a federal district court upon the ground that the jury was composed of only eleven men. This court held that the trial court had jurisdiction, and a record showing upon its face that a lawful jury had been impaneled, sworn and charged could not be collaterally impeached. The remedy was by writ of error.

This conclusion in respect of the jurisdiction of the courts, notwithstanding the peremptory words of the Third Article of the Constitution, is fortified by a consideration of certain provisions of the Judiciary Act of 1789. That act was passed shortly after the organization of the government under the Constitution, and on the day preceding the proposal of the first ten amendments by the first Congress. Among the members of that Congress were many who had participated in the

convention which framed the Constitution and the act has always been considered, in relation to that instrument, as a contemporaneous exposition of the highest authority. *Capital Traction Company* v. *Hof, supra,* pp. 9–10, and cases cited. Section 9 of that act provides that " the trial of issues in [of] fact, in the district courts, in all causes except civil causes of admiralty and maritime jurisdiction, *shall be by jury.*" Section 12 provides that " the trial of issues in [of] fact in the circuit courts *shall,* in all suits, except those of equity, and of admiralty, and maritime jurisdiction, *be by jury.*"

It will be observed that this language is mandatory in form, and is precisely the same as that of Article III, Section 2, of the Constitution. It is fair to assume that the framers of the statute, in using the words of the Constitution, intended they should have the same meaning; and if the purpose of the latter was jurisdictional, it is not easy to avoid the conclusion that the purpose of the former was the same. But this court has always held, beginning at an early day, that, notwithstanding the imperative language of the statute, it was competent for the parties to waive a trial by jury. The early cases are collected in a footnote to *Kearney* v. *Case,* 12 Wall. 275, 281, following the statement:

" Undoubtedly both the Judiciary Act and the amendment to the Constitution secured the *right* to either party in a suit at common law to a trial by jury, and we are also of opinion that the statute of 1789 intended to point out this as the mode of trial in issues of fact in such cases. Numerous decisions, however, had settled that this right to a jury trial might be waived by the parties, and that the judgment of the court in such cases should be valid."

The Seventh Amendment, which is here referred to, provides, in respect of suits at common law involving a value exceeding twenty dollars, that " the right of trial

by jury shall be preserved"; and it is significant that this language and the positive provision of the statute that "the trial of issues of fact . . . shall be by jury" were regarded as synonymous.

Another ground frequently relied upon for denying the power of a person accused of a serious crime to waive trial by jury is that such a proceeding is against public policy. The decisions are conflicting. The leading case in support of the proposition, and one which has influenced other decisions advancing similar views, is *Cancemi* v. *The People,* 18 N. Y. 128, 137–138. In that case Cancemi was indicted for the crime of murder. After a jury had been impaneled and sworn, and the trial begun, under a stipulation made by the prisoner and his counsel and counsel for the people, and with the express consent and request of the prisoner, a juror was withdrawn, and a verdict subsequently rendered by the remaining eleven jurors. On appeal a judgment based upon this verdict was reversed. The case was decided in 1858, and the question was regarded by the court as one of first impression. The following excerpt from the opinion indicates the basis of the decision:

" The state, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away 'without due process of law' (Const., art. 1, § 6), when forfeited, as they may be, as a punishment for crimes. Criminal prosecutions proceed on the assumption of such a forfeiture, which, to sustain them, must be ascertained and declared as the law has prescribed. Blackstone (vol. 4, 189) says: 'The king has an interest in the preservation of all his subjects.' . . . Objections to jurors may be waived; the court may be substituted for triers to dispose of challenges to jurors; secondary in place of primary evidence may be received; admissions of facts

are allowed; and in similar particulars, as well as in relation to mere formal proceedings generally, consent will render valid, what without it would be erroneous. A plea of guilty to any indictment, whatever may be the grade of the crime, will be received and acted upon if it is made clearly to appear that the nature and effect of it are understood by the accused. In such a case the preliminary investigation of a grand jury, with the admission of the accusation in the indictment, is supposed to be a sufficient safeguard to the public interests. But when issue is joined upon an indictment, the trial must be by the tribunal and in the mode which the constitution and laws provide, without any essential change. The public officer prosecuting for the people has no authority to consent to such a change, nor has the defendant.

"Applying the above reasoning to the present case, the conclusion necessarily follows, that the consent of the plaintiff in error to the withdrawal of one juror, and that the remaining eleven might render a verdict, could not lawfully be recognized by the court, at the circuit, and was a nullity. If a deficiency of one juror might be waived, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone. It would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think it ought not to be tolerated."

A decision flatly to the contrary, and one fairly representative of others to the same effect, is *State* v. *Kaufman,* 51 Iowa 578. The defendant there was indicted

for forgery. Upon the trial, one of the jurors, being ill, was discharged with the consent of the defendant, and the trial concluded with the remaining eleven. There was a verdict of guilty. Upon appeal the verdict was upheld. The authorities upon the question are reviewed, and in the course of the opinion the court says (pp. 579–580):

"A plea of guilty ordinarily dispenses with a jury trial, and it is thereby waived. This, it seems to us, effectually destroys the force of the thought that 'the State, the public, have an interest in the preservation of the lives and the liberties of the citizens, and will not allow them to be taken away without due process of law.' The same thought is otherwise expressed by Blackstone, vol. 4, p. 189, that 'the king has an interest in the preservation of all his subjects.'

" It matters not whether the defendant is, in fact, guilty; the plea of guilty is just as effectual as if such was the case. Reasons other than the fact that he is guilty may induce a defendant to so plead, and thereby the State may be deprived of the services of the citizen, and yet the State never actually interferes in such case, and the right of the defendant to so plead has never been doubted. He must be permitted to judge for himself in this respect. So in the case at bar. The defendant may have consented to be tried by eleven jurors, because his witnesses were then present, and he might not be able to get them again, or that it was best he should be tried by the jury as thus constituted. Why should he not be permitted to do so? Why hamper him in this respect? Why restrain his liberty or right to do as he believed to be for his interest? Whatever rule is adopted affects not only the defendant, but all others similarly situated, no matter how much they may desire to avail themselves of the right to do what the defendant desires to repudiate. We are unwilling to establish such a rule."

Referring to the statement in the *Cancemi* case, that it would be a highly dangerous innovation to allow any number short of a full panel of twelve jurors and one not to be tolerated, it is said (p. 581):

" This would have been much more convincing and satisfactory if we had been informed why it would be ' highly dangerous,' and should ' not be tolerated,' or, at least, something which had a tendency in that direction. For if it be true, as stated, it certainly would not be difficult to give a satisfactory reason in support of the strong language used."

See also *State* v. *Sackett,* 39 Minn. 69, where the court concludes its discussion of the subject by saying (p. 72):

" The wise and beneficent provisions found in the constitution and statutes, designed for the welfare and protection of the accused, may be waived, in matters of form and substance, when jurisdiction has been acquired, and within such limits as the trial court, exercising a sound discretion in behalf of those before it, may permit. The defendants, having formally waived a juror, and stipulated to try their case with 11, cannot now claim that there was a fatal irregularity in their trial."

It is difficult to see why the fact, frequently suggested, that the accused may plead guilty and thus dispense with a trial altogether, does not effectively disclose the fallacy of the public policy contention; for if the state may interpose the claim of public interest between the accused and his desire to waive a jury trial, *a fortiori* it should be able to interpose a like claim between him and his determination to avoid any form of trial by admitting his guilt. If he be free to decide the question for himself in the latter case, notwithstanding the interest of society in the preservation of his life and liberty, why should he be denied the power to do so in the former? It is no answer to say that by pleading guilty there is nothing left for a jury to try, for that simply ignores the question, which is not

what is the effect of the plea? the answer to which is fairly obvious, but, in view of the interest of the public in the life and liberty of the accused, can the plea be accepted and acted upon, or must the question of guilt be submitted to a jury at all events? Moreover, the suggestion is wholly beside the point, which is, that public policy is not so inconsistent as to permit the accused to dispense with *every* form of trial by a plea of guilty, and yet forbid him to dispense with a *particular* form of trial by consent.

The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another.

It may be conceded, at least generally, that under the rule of the common law the accused was not permitted to waive trial by jury, as generally he was not permitted to waive any right which was intended for his protection. Nevertheless, in the Colonies such a waiver and trial by the court without a jury was by no means unknown, as the many references contained in the brief of the Solicitor General conclusively show. But this phase of the matter we do not stop to consider, for the rule of the common law, whether exclusive or subject to exceptions, was justified by conditions which no longer exist; and as the Supreme Court of Nevada well said in *Reno Smelting Works* v. *Stevenson,* 20 Nev. 269, 279:

" It is contrary to the spirit of the common law itself to apply a rule founded on a particular reason to a law when that reason utterly fails—*cessante ratione legis, cessat ipsa lex.*"

The maxim seems strikingly apposite to the question here under review. Among other restraints at common law, the accused could not testify in his own behalf; in felonies he was not allowed counsel (IV Sharswood's Blackstone, 355, Note 14), the judge in such cases occupying the place of counsel for the prisoner, charged with the responsibility of seeing that the prisoner did not suffer from lack of other counsel (*id.*); and conviction of crime worked an attaint and forfeiture of official titles of inheritance, which, as Judge Aldrich points out (quotation *supra*), constituted in a large sense the reason for withholding from accused parties the right of waiver.

These conditions have ceased to exist, and with their disappearance justification for the old rule no longer rests upon a substantial basis. In this respect we fully agree with what was said by the Supreme Court of Wisconsin in *Hack* v. *State*, 141 Wis. 346, 351–352:

" The ancient doctrine that the accused could waive nothing was unquestionably founded upon the anxiety of the courts to see that no innocent man should be convicted. It arose in those days when the accused could not testify in his own behalf, was not furnished counsel, and was punished, if convicted, by the death penalty or some other grievous punishment out of all proportion to the gravity of his crime. Under such circumstances it was well, perhaps, that such a rule should exist, and well that every technical requirement should be insisted on, when the state demanded its meed of blood. Such a course raised up a sort of a barrier which the court could utilize when a prosecution was successful which ought not to have been successful, or when a man without money, without counsel, without ability to summon witnesses, and not permitted to tell his own story, had been unjustly convicted, but yet under the ordinary principles of waiver,

as applied to civil matters, had waived every defect in the proceedings.

" Thanks to the humane policy of the modern criminal law we have changed all these conditions. The man now charged with crime is furnished the most complete opportunity for making his defense. He may testify in his own behalf; if he be poor, he may have counsel furnished him by the state, and may have his witnesses summoned and paid for by the state; not infrequently he is thus furnished counsel more able than the attorney for the state. In short, the modern law has taken as great pains to surround the accused person with the means to effectively make his defense as the ancient law took pains to prevent that consummation. The reasons which in some sense justified the former attitude of the courts have therefore disappeared, save perhaps in capital cases, and the question is, Shall we adhere to the principle based upon conditions no longer existing? No sound reason occurs to us why a person accused of a lesser crime or misdemeanor, who comes into court with his attorney, fully advised of all his rights and furnished with every means of making his defense, should not be held to waive a right or privilege for which he does not ask, just as a party to a civil action waives such a right by not asking for it."

The view that power to waive a trial by jury in criminal cases should be denied on grounds of public policy must be rejected as unsound.

It is not denied that a jury trial may be waived in the case of petty offenses, but the contention is that the rule is otherwise in the case of crimes of the magnitude of the one here under consideration. There are decisions to that effect, and also decisions to the contrary. The conflict is marked and direct. *Schick* v. *United States, supra,* is thought to favor the contention. There the prosecution

was for a violation of the Oleomargarine Act (24 Stat. 209), punishable by fine only. By agreement in writing a jury was waived and the issue submitted to the court. Judgment was for the United States. This court held that the offense was a petty one, and sustained the waiver. It was said that the word " crimes " in Article III, Section 2, of the Constitution, should be read in the light of the common law, and so read, it does not include petty offenses; and that neither the constitutional provisions nor any rule of public policy prevented the defendant from waiving a jury trial. The question whether the power of waiver extended to serious offenses was not directly involved, and is not concluded by that decision. Mr. Justice Harlan, in a dissenting opinion, after reviewing the authorities, concluded (p. 83) that " The grounds upon which the decisions rest are, upon principle, applicable alike in cases of felonies and misdemeanors, although the consequences to the accused may be more evident as well as more serious in the former than in the latter cases."

Although we reject the general view of the dissenting opinion that a waiver of jury trial is not valid in any criminal case, we accept the foregoing statement as entirely sound. We are unable to find in the decisions any convincing ground for holding that a waiver is effective in misdemeanor cases but not effective in the case of felonies. In most of the decisions no real attempt is made to establish a distinction, beyond the assertion that public policy favors the power of waiver in the former but denies it in the latter because of the more serious consequences in the form of punishment which may ensue. But that suggested differentiation, in the light of what has now been said, seems to us more fanciful than real. The *Schick* case, it is true, dealt with a petty offense, but, in view of the conclusions we have already

reached and stated, the observations of the court (pp. 71–72) have become equally pertinent where a felony is involved:

"Article six of the amendments, as we have seen, gives the accused a right to a trial by jury. But the same article gives him the further right ' to be confronted with the witnesses against him . . . and to have the assistance of counsel.' Is it possible that an accused cannot admit and be bound by the admission that a witness not present would testify to certain facts? Can it be that if he does not wish the assistance of counsel and waives it, the trial is invalid? It seems only necessary to ask these questions to answer them. When there is no constitutional or statutory mandate, and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy."

In *Commonwealth* v. *Beard,* 48 Pa. Super. Ct. 319, the prosecution was for conspiracy, and there, as here, one of the jurors was discharged and the trial concluded with the remaining eleven. Judgment on a verdict of conviction was sustained. The court, after reviewing the conflicting decisions, was unable to find any good reason for differentiating in the matter of waiver between the two classes of crimes. We fully endorse its concluding words upon that subject (pp. 323–324):

" It surely cannot be true that the public is interested in the protection of an accused in proportion to the magnitude of his offending—that its solicitude goes out to the great offender but not to the small—that there is a difference in point of sacredness between constitutional rights when asserted by one charged with a grave crime and when asserted by one charged with a lesser one. Hence, when it is held in Schick *v.* U. S., 195 U. S. 65 (24 Sup. Ct. Repr. 826), that in trials for the lowest grades of offenses the accused may waive, not only the continued presence of the full number of jurors re-

quired to make up a jury, but the right to trial by jury, the only possible conclusion is that the purely theoretical element of public concern, as potential to override the accused's own free choice and render him effectually unfree even before conviction and sentence, cannot be regarded as in reality much of a factor in any case."

This view of the matter subsequently had the approval of the supreme court of the state in *Commonwealth ex rel. Ross* v. *Egan,* 281 Pa. 251. After noting the conflict of authority, and that a waiver has been held to be effective in a number of states which are named, it is there said (pp. 255, 256, 257):

"A defendant is supposed to understand his rights, and may be aided, if he so desires, by counsel to advise him. There are many legal provisions for his security and benefit which he may dispense with absolutely, as, for instance, his right to plead guilty and submit to sentence without any trial whatsoever."

.        .        .        .        :        .

" The theory upon which the opposing cases are decided seems to rest on the proposition that society at large is as much interested in an impartial trial of a defendant, who may be sentenced to imprisonment, as he himself is, and therefore no permission to waive any right, when charged with a felony, should be accorded to him. There may be reason for applying this rule to capital cases, as has been done in Pennsylvania, but such a principle ought not to be invoked to relieve those charged with lesser offenses, such as larceny (though technically denominated a felony), from the consequences of their own voluntary act, and where it appears by the record that consent to the course pursued was freely given, the defendant should not be heard thereafter to complain."

.        .        .        .        .        .        .

" The solution of the question depends upon the determination whether a trial by less than twelve is an irregularity or a nullity. If the latter be held, no sentence imposed may be sustained, but the contrary is true if the former and correct conclusion be reached. In the case of misdemeanors, the Superior Court has sustained the sentences where a voluntary waiver appeared: Com. *v.* Beard, supra. No real justification for a different decision in the case of felonies, not capital, can be supported."

See also *Commonwealth* v. *Rowe,* 257 Mass. 172, 174–176; *State* v. *Ross,* 47 S. D. 188, 192–193, involving a misdemeanor, but followed in *State* v. *Tiedeman,* 49 S. D. 356, 360, involving a felony.

In affirming the power of the defendant in any criminal case to waive a trial by a constitutional jury and submit to trial by a jury of less than twelve persons, or by the court, we do not mean to hold that the waiver must be put into effect at all events. That perhaps sufficiently appears already. Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of

trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.

The question submitted must be answered in the affirmative.

*It is so ordered.*

The CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE SANFORD participated in the consideration and agreed to a disposition of the case in accordance with this opinion.

MR. JUSTICE HOLMES, MR. JUSTICE BRANDEIS, and MR. JUSTICE STONE concur in the result.