**EVERGREEN CEMETERY ASS'N v. BURNET, Commissioner of Internal Revenue.**

No. 4959.

Court of Appeals of District of Columbia.

Submitted Nov. 5, 1930.

Decided Dec. 1, 1930.

John F. Hughes, of New York City, for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, Donald V. Hunter, Sewall Key, and F. Edward Mitchell, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice.

This appeal involves certain corporation income and profits taxes for the year 1921, and challenges a deficiency in the sum of $13,866.17 determined by the Commissioner of Internal Revenue against appellant, and affirmed by the Board of Tax Appeals. The record does not set out any of the testimony heard by the Board; the findings of fact reported by the Board are therefore accepted as conclusive.

The appellant, Evergreen Cemetery Association, is a Michigan corporation engaged in the operation of a cemetery at Detroit. In the year 1920 it began the construction of a mausoleum, the crypts and rooms of which were to be sold to the public. In that year, and before the construction of the building

had started, appellant through salesmen solicited contracts of purchase, using a form reading as follows:

"I, the undersigned, do hereby subscribe for and purchase from the Evergreen Cemetery Association, of Detroit, Mich., Crypts Nos. — in the Community Mausoleum to be erected in The Evergreen Cemetery at Detroit, Mich., plans and specifications of which are now on file with the Cemetery Trustees, and I agree and promise to pay to The Evergreen Cemetery Association, or order, for said crypts, the sum of Three hundred and fifty Dollars ($350.00) in equal quarterly payments as follows: thirty (30%) per cent of the above amount on ten day demand, but not before the foundations for the building are started; thirty (30%) per cent, on ten day demand, but not before the exterior walls are started; thirty (30%) on ten day demand, but not before the roof is started; and the remaining ten (10%) per cent on ten day demand after the building is completed; it being understood that a published statement by the Cemetery Trustees in local newspapers, certifying the fulfillment of each specific part of the construction as herein mentioned, shall be considered by me as ample proof that the same has been done, and The Evergreen Cemetery Association entitled to that respective payment.

"It is mutually understood and agreed that should the construction of the building not be started before May 30, 1921, this contract shall become null and void, and it is further agreed that upon any failure on my part to carry out the terms herein set forth, all payments made by me shall be forfeited to The Evergreen Cemetery Association as liquidating damages. Certificate of ownership will be given upon final payment. No agreements or verbal statements other than shown on face of this contract shall be binding, except when made in writing and signed by an officer of The Evergreen Cemetery Association.

"[Signed] Purchaser:——————
"Address:——————"

Upon the making of the final payment, appellant issued to the purchaser a certificate of ownership upon the following form:

"Certificate of Ownership.

"Know all men by these presents that The Evergreen Cemetery Association, a Michigan Corporation, the grantor, for and in consideration of the sum of —— Dollars, to it paid by ——, the grantee, does hereby grant, bargain, sell and convey to the said grantee, —— heirs and assigns forever, as a place of burial for the human dead, the use of Crypt numbered — in the Community Mausoleum erected by said grantor, in the Evergreen Cemetery, situated in the City of Detroit, County of Wayne, and State of Michigan, together with all the appurtenances thereunto belonging."

"To have and to hold the use of the above granted Crypt to the said grantee,—heirs and assigns forever, subject however, to the laws of the state, and to the conditions and restrictions contained in the rules and regulations of The Evergreen Cemetery Association now in force, or which may hereafter be adopted and the said grantor hereby covenants to and with the said grantee,—heirs and assigns, that it is lawfully seized of the above granted premises, and has good right to sell and convey the use of the same for the purposes above expressed."

"In testimony whereof, said The Evergreen Cemetery Association has caused its corporate name to be signed, and its corporate seal affixed hereto by its proper officers thereunto duly authorized, this — day of ——, A. D. 192—.

"The Evergreen Cemetery Association."

In the year 1920 contracts were closed for the sale of a number of crypts at an aggregate price of $53,325; and by the end of 1921 the total sales reached the sum of $160,-900. The exact date when the construction of the mausoleum was started does not appear in the record, but the building was fully completed and available to patrons in the year 1921, and all installments of the purchase price of lots sold became due and payable in that year. No forfeiture was incurred by any purchaser during 1920 or 1921.

Appellant kept its books of account upon an accrual basis in the years in question, and regularly credited the total price of $160,900 in its profit and loss account. It appeared from appellant's accounts that the total cost of the crypts thus sold in the two years amounted to $86,681, leaving a gross entered profit upon the aggregate sales in the sum of $74,218.55. The installments of purchase money due and owing from purchasers of the crypts were not, however, fully paid in the years 1920 and 1921; the payments by the end of 1921 totaling only $44,600. The total cost of the crypts thus fully paid for as shown by appellant's books amounted to $24,095.80.

Appellant contended that the only income which had accrued to it during the year 1921

from these transactions was the difference between the amount of the payments actually received by it and the cost of the crypts thus paid for; such difference being the sum of $20,504.10. Appellant made its income and profits tax return for the calendar year 1921 upon that basis.

The Commissioner of Internal Revenue thereupon determined a deficiency of $13,866.17 against appellant for the calendar year 1921, upon the ground that the entire sum of $160,900 constituted the taxable gross income of appellant from the transaction in that year. This determination was sustained by the Board of Tax Appeals, 13 B. T. A. 638, and the present appeal was taken from that decision.

Upon the foregoing facts we agree with the Board's decision. Appellant was permitted to report its income according to the method adopted in keeping its books of account. Inasmuch as its books of account were kept upon an accrual basis and its report was made accordingly, appellant was bound to include in its gross income all such items as had accrued to it in the taxable period. Section 212(b), Revenue Act of 1921, 42 Stat. 227. Appellant failed to do this, for the entire sales price of all crypts sold by it had accrued in the year 1921, for by the end of that year the liability of the purchasers of crypts for the agreed prices thereof had become and was a present, fixed, and unqualified obligation of the purchasers, which, in so far as not already actually paid, constituted an accrued debt due to appellant. The entries upon appellant's books confirm this view, and the Board has found it as a fact. Upon the record, therefore, we agree with the Board's decision. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; Niles Bement Pond Co. v. United States, 281 U. S. 357, 50 S. Ct. 251, 74 L. Ed. 901.

The decision of the Board of Tax Appeals is affirmed.