**UNITED STATES of America**

v.

**Carl Hargis SCOTT.**

United States District Court
M. D. North Carolina,
Greensboro Division.

March 12, 1959.

in interstate commerce two stolen automobiles into North Carolina under 18 U.S.C.A. § 2312. From his conviction and sentence of five years on the first count and three years on the second, to run consecutively, he appealed to the Circuit Court of Appeals, which affirmed the judgment imposed. 4 Cir., 255 F.2d 18.

This defendant and his co-defendant, Ingram, were discharged from the Missouri Penitentiary on the 17th day of May, 1957, and on or about June 1, 1957, they procured eight automobiles from a car dealer in Kentucky by means of a bogus check in the sum of $4,250. Scott was the drawer of the check and the moving party in the transactions. Two of these cars were transported by him and Ingram into West Virginia and thence to High Point, North Carolina.

In his appeal to the Circuit Court, Scott presented three points for reversal: First, the refusal of the Court to transfer the case to Kentucky for trial; second, the vehicles were not stolen within the meaning of 18 U.S.C.A. § 2312, and third, he did not drive but one of the cars and should not have been convicted or sentenced for the transportation of the other. These contentions are elaborately set forth in the opinion and his contentions rejected. His check was dated June 1, at which time he obtained possession of some of the cars, but the two cars stated in the indictment were transported into North Carolina on June 3.

The indictment in this case was filed August 22, 1957, by the grand jury at Greensboro, North Carolina. The warrant of arrest under the indictment was issued by the Clerk of this Court on August 27, 1957. A Deputy Marshal for the Southern District of West Virginia makes his return on this warrant showing that he received it the 17th day of September, 1957, and executed the same. The Honorable Ben Moore, United States District Judge for the Southern District of West Virginia, signed the order of removal September 24, 1957, which recites that after the defendant Scott having been arrested and after hearing, the

James E. Holshouser, U. S. Atty., Greensboro, N. C., for the United States.

Carl Hargis Scott, pro se.

HAYES, District Judge.

The petitioner, Carl Hargis Scott, was convicted on two counts for transporting

Marshal was commanded by Judge Moore to remove said Scott to the Middle District of North Carolina and deliver him to the Marshal of that district. The Marshal received that warrant of removal on September 26, 1957, and executed it on that date by delivering the said Carl Scott to the United States Marshal at Greensboro. These are the actual record returns in the file of the case. The United States Commissioner issued a temporary commitment of Carl Hargis Scott on September 17, 1957, under which commitment he was held until he was removed under the order of Judge Moore.

The petitioner is now asking relief from the judgment under Title 28 U.S.C.A. § 2255, and asking to proceed as a pauper. In substance he claims to have been arrested on September 16 and held 11 days without a warrant; secondly, that before he was arrested he was committed to a Veterans' Hospital touching on his mental condition; thirdly, that he was convicted by a jury of only 11 and not by a panel of 12 as provided by the United States Constitution, and finally, that the indictment was insufficient.

There is no merit in any of these contentions. If the Court, after examining the record, had conceived that there was the slightest question of merit, it would have unhesitatingly authorized him to proceed and required him to have been brought before the Court. However, the Court ought not to permit him to proceed as a pauper at the Government expense by bringing him before the Court for a hearing when it is clearly manifest that it would be a useless undertaking. Armpriester v. United States, 4 Cir., 256 F.2d 294; Gravely v. United States, 4 Cir., 251 F.2d 360, and United States v. McGann, D.C., 163 F. Supp. 417, which opinion of Judge Chestnut was adopted by the Circuit Court of Appeals in affirming it. The defendant is confusing the grounds of his complaint with the situation where he was held without a preliminary hearing, and by reason of his detention confessions were extorted by the arresting officers. His petition fails to set forth in what respect, if any, he was injured or prejudiced by being detained without a preliminary hearing before the United States Commissioner. In this case, however, probable cause was established when the bill of indictment was returned by the grand jury long before he was arrested and the sole question as to him after his arrest was whether he was the defendant named in the indictment, purely a matter of identity, on which point there is no controversy. If it be conceded that a sister had him committed, or endeavored to have him committed, on the basis of insanity prior to the commission of the offense, the facts disclosed to the court before imposing the sentence and after his conviction, revealed that he was in a Veterans' Hospital in 1950, from January 2 to January 6, when the doctor found that he was not suffering from any psychosis but that he probably had some mal-function of his pituitary gland. He had been at liberty after being discharged from the hospital on January 6, 1950, except during the intervals when he was incarcerated in prison either for crimes committed or of which he was convicted. He had served something over 14 months in the Missouri penitentiary immediately preceding his release on May 17, 1957. He was a witness in his own behalf, was examined by counsel of his own choosing who ably represented him, then cross-examined by the attorney representing his co-defendant and finally by the United States Attorney. His counsel did not interpose any plea of insanity nor was there the slightest indication in the prolonged trial and his testimony on the stand to indicate or suggest that he was mentally incapacitated. Had there been anything to so indicate the lack of responsibility, the Court would have directed an examination to be made by a psychiatrist.

The defendant now raises for the first time the fact that he was convicted by a jury of only 11 persons and not by a full panel of 12, as required by the Con-

stitution of the United States. A jury of 12 was empaneled and heard the trial for one day. It developed at the end of the day that one juror could not be present the next day without great inconvenience. This was called to the attention of the Court and the Court in turn called it to the attention of counsel representing each defendant and the United States. The defendants were brought back into the courtroom after the court had recessed, were fully informed of the developments, and in the hearing of counsel involved, consented to the excuse of one of the jurors and for the 11 to return the verdict, and each of the defendants was specifically asked by the Court the defendant's attitude in that particular and each of them expressly consented for the juror to be excused, and for the 11 to return the verdict. The defendant cannot now take advantage of that situation. The legality of it is expressly established in the case of Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854. That was the precise question before the court. The colloquy which occurred at the time this court excused the juror appears in the margin.[1]

The entire record discloses that the defendant was shrewd enough to assume that if he gained possession of the cars by means of a check in the State of Kentucky that he wouldn't be guilty of stealing them and, therefore, could not be guilty of transporting stolen automobiles in interstate commerce. He stated during the trial that he didn't know the court had held otherwise. But he had his hearings both in this court and in the Circuit Court of Appeals on this question and they have been resolved against him. There is no doubt that he transported one of the automobiles and procured the other one to be transported by his codefendant.

■ There is no defect whatever in the bill of indictment. Alm v. United States, 8 Cir., 238 F.2d 604. The indictment here is in exact accordance with the form recommended by the United States Supreme Court in Title 18 U.S. C.A.Appendix of Forms, being Form No. 6.

There is no merit in his motion and he is not entitled to any relief. It is, therefore, accordingly denied and his petition dismissed to which the Court allows him an exception.

1. "The Court: After the court took its recess until tomorrow and sent the jury away into the jury room, it developed that one of the lady jurors has certain business engagements for tomorrow and she seems to be very greatly agitated over having to attend court tomorrow. As a result of this the Court called the United States Attorney and the attorneys representing the defendants to the bench to inquire if it would be agreeable by consent to let the juror be excused and let the other eleven jurors act as a jury in the case. The United States Attorney consents to this agreement and Mr. Boren, the attorney, insofar as he is concerned consents to it and Mr. Alston, the attorney, will consent to it, but the court had the two prisoners brought back into court for the purpose of inquiring if they consent. Now the question is this: we can force the woman to come back on tomorrow and act as a juror or we can let her go and let the other eleven pass on the case. Do you consent or do you object.

"Defendant Scott: I believe that, Your Honor, if the lady has other engagements or sick, I believe after all the evidence is heard by eleven people or by a reasonable amount of people that are intelligent they can see this case and I will consent to that.

"The Court: You consent for her to be excused and for the eleven to try it?

"Defendant Scott: Yes.

"The Court: What about you now, Mr. Ingram?

"Defendant Ingram: Your Honor, I consent to that.

"The Court: You consent, too?

"Defendant Ingram: Yes, sir.

"The Court: All right. Now both defendants through their counsel and the United States counsel consent to the excusing of this one juror—I don't know what her name is—and for the other eleven to constitute the jury.

"Mr. Alston: We could all recognize her by sight, Judge, we know which one she is.

"The Court: Well, I will tell the woman that she may be excused."