THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MELVIN DOUGLAS, Appellant.

First Department, November 12, 1963.

*Whitman Knapp* of counsel (*Richard B. Cooper,* attorney), for appellant.

*H. Richard Uviller* of counsel (*Milton M. Stein* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

BASTOW, J. Defendant appeals from a judgment convicting him of murder, first degree and sentencing him to life imprisonment. He and one Williams were jointly indicted in July, 1961. Appellant was arraigned on July 31, 1961 and four attorneys were assigned. Subsequently, one of the four withdrew and a fifth attorney was substituted. On May 31, 1962 upon motion of the prosecutor a special jury was granted and 200 jurors were ordered drawn to attend a stated part on June 15, 1962.

On the latter date the prosecutor was present, the two defendants and the four attorneys assigned to the codefendant. At 12:10 P.M. the court announced that two of the four attorneys, who had been assigned to appellant some 10 months before, were ill, a third was "actually on trial" and the fourth "has not come yet". The court stated that "All counsel were advised to be present some two weeks ago, they were notified that the case was on for trial. * * * The [appellant] cannot be prejudiced in any way by appointing another counsel to start at the beginning of this trial." The court then appointed another attorney (the sixth) to be one of the co-counsel for appellant. The case was moved for trial and without a moment's delay (so far as the record shows) the new co-counsel announced that appellant was ready. After a juror had been sworn on *voir dire* the newly assigned counsel requested and was granted an adjournment from that day (Friday) to the following Monday.

At the opening of court on that day the court without explanation relieved the sixth attorney, who had been assigned on Friday, and assigned a seventh attorney upon whom rested the burden of conducting appellant's defense during the ensuing trial that lasted two full weeks. After a 10-minute recess this latest assigned counsel stated to the court: "I am just in this matter and I would be most appreciative, sir, if your Honor would allow an adjournment at twelve o'clock and maybe resume at perhaps 2:15 or 2:30." The court did not reply and the trial proceeded. The prosecutor made a preliminary statement and the juror who had been seated on Friday was examined

"and at twelve o'clock noon he was not selected as a juror." The trial was recessed to 2:15 P.M.

The selection of a jury continued for another two and a-half days. This examination is not set forth in the record so we do not have the benefit thereof. It is also difficult to ascertain from the record to what extent the other three assigned counsel appeared during the two weeks' trial. On the opening day (June 18) two of the attorneys originally assigned are listed as appearing. A third was stated to be present "by" another attorney (the eighth attorney to appear or be appointed). The inability to ascertain what assigned counsel were present during the trial is due to the fact that at the opening of each court day the stenographer only set forth that "the defendants and their counsel * * * are present." The single tell-tale sign in the record is on next to the last day of the trial when defendant's mother was testifying on his behalf. The presence of one of the originally assigned attorneys is proven by an incident when the latter and appellant's active trial counsel engaged in a brief exchange of words as to whether co-counsel should not take over the redirect examination of the witnesses.

Unlike some States (cf. *Gideon* v. *Wainwright*, 372 U. S. 335) there is firmly embedded in our Constitution (art. I, § 6) and decisional law the right of a defendant in a criminal case to defend in person or with counsel who may be either of his own choosing or under appropriate circumstances, by assignment by the court. (*People* v. *Koch*, 299 N. Y. 378, 381.) "The right and the duty of our courts, to assign counsel for the defense of destitute persons, indicted for crime, has been, by long and uniform practice, as firmly incorporated into the law of the State, as if it were made imperative by express enactment." (*People ex rel. Saunders* v. *Board of Supervisors*, 1 Sheld. 517, 524.) For 70 years there have existed in one form or another statutory provisions authorizing the award of compensation to those attorneys who are assigned to defendants in capital cases (L. 1893, ch. 521; Code Crim. Pro., § 308).

"Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused." (*Glasser* v. *United States*, 315 U. S. 60, 71) and in considering one of those duties it has been written that the duty of the trial court "is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity." (*Patton* v. *United States*, 281 U. S. 276, 312–313.)

Both of these decisions were cited with approval in *People* v. *Snyder* (297 N. Y. 81) where assigned counsel was ordered to proceed with the trial in a capital case within six days after his assignment and within four days after he had communicated with the retiring counsel. In an opinion concurring with the majority for reversal of the judgment of conviction then Judge DESMOND wrote that "Since no court has any right to deprive a defendant of the protections guaranteed him by law [citing case] my vote is for reversal here, regardless of any lack of showing of prejudice, regardless of the strength of the proof of [appellant's] guilt, and despite the fact that [appellant] appears to have been expertly defended at the trial."

And in the same vein it was said in *People* v. *McLaughlin* (291 N. Y. 480, 483): "This fundamental right [to counsel] is denied to a defendant unless he gets reasonable time and a fair opportunity to secure counsel of his own choice and, with that counsel's assistance, to prepare for trial; no last-minute, peremptory assignment of counsel will serve, particularly when made at such a time and under such circumstances as practically to preclude the giving by counsel to prisoner and prisoner to counsel, of effective aid in the preparation of the case."

We cannot decide from this cold record what further service counsel assigned to defendant at the 11th hour (and who conducted the defense with ability and vigor) might have been able to render to his client. The same record, however, presents disturbing elements to some of us. The defendant testified in his own behalf. His direct testimony covers less than three pages and consists of a denial of the commission of the crime and brief testimony that he was at his mother's home on the night in question. Upon cross-examination, however, he freely admitted that on other occasions he obtained money for narcotics by playing a confidence game that fitted perfectly with the theory of the prosecution as to the manner in which the victim of the homicide met his death. If appellant had been bent on self-destruction of any defense he could scarcely have been more effective. After seven pages of cross-examination the trial was interrupted by the Bench plea of appellant's counsel for a 10-minute recess so he could "get a disposition in this case". Following the recess the codefendant entered a plea to manslaughter, first degree, and after having returned a verdict convicting appellant the jury was informed by the court that the latter "was offered the same deal".

The disturbing feature is that 24 days after appellant was received in prison he was found to be insane and was transferred to Dannemora State Hospital where he is now confined.

Whether trial counsel, given adequate and proper time for preparation and pretrial conferences with his client, could or would have taken other action either before or upon the trial is a matter upon which we may not speculate.

To the plaint that neither lawyer number six nor lawyer number seven voiced any objection to proceeding with the trial it has been written that "assigned counsel may have been reluctant to challenge the propriety of their assignment or the failure of the trial court to permit adequate time for the preparation of a defense when the assignment was accepted with full knowledge of all the circumstances. Such an inhibition might impair the right of defendant to counsel, as it may cast doubt on the freedom of assigned counsel to fully and properly represent the defendant." (*People* v. *Silverman*, 3 N Y 2d 200, 203.)

We conclude upon the facts here presented that the burden does not rest on appellant to establish that the verdict was contrary to the evidence or that he was specifically prejudiced by the last-minute assignment of trial counsel. Bench and Bar alike in this State are justifiably proud of our long history of the defense in criminal cases of indigent defendants. This is particularly true in capital cases where it may be safely said that through the years indigent defendants have received as able, and sometimes better, representation than one of means could obtain. We regretfully conclude that the happenings in this case constituted an unreasonable departure from the mode of trial and the essential elements thereof demanded by controlling precedents.

The judgment of conviction should be reversed and a new trial granted in the interests of justice.

McNALLY and STEVENS, JJ. (dissenting). A review of the record shows adequate protection of defendant's right to counsel. The situation presented by the case before us is dissimilar to that of *People* v. *McLaughlin* (291 N. Y. 480) and *People* v. *Snyder* (297 N. Y. 81).

BOTEIN, P. J., and BREITEL, J., concur with BASTOW, J.; McNALLY and STEVENS, JJ., dissent in opinion.

Judgment of conviction reversed and a new trial granted in the interests of justice.