# SUPREME COURT OF THE UNITED STATES

## NATOYA CUNNINGHAM *v.* FLORIDA

ON PETITION FOR WRIT OF CERTIORARI TO THE DISTRICT
COURT OF APPEAL OF FLORIDA, FOURTH DISTRICT

No. 23–5171.   Decided May 28, 2024

The petition for a writ of certiorari is denied.

JUSTICE GORSUCH, dissenting from the denial of certiorari.

"For almost all of this Nation's history and centuries before that, the right to trial by jury for serious criminal offenses meant the right to a trial before 12 members of the community." *Khorrami* v. *Arizona*, 598 U. S. \_\_\_, \_\_\_ (2022) (GORSUCH, J., dissenting from denial of certiorari) (slip op., at 9). Acutely concerned with individuals and their liberty, the framers of our Constitution sought to preserve this right for future generations. See *id.*, at \_\_\_–\_\_\_ (slip op., at 2–3); Art. III, §2, cl. 3; Amdt. 6. Yet today, a small number of States refuse to honor its promise. Consider this case: A Florida court sent Natoya Cunningham to prison for eight years on the say of just six people.

Florida does what the Constitution forbids because of us. In *Williams* v. *Florida*, this Court in 1970 issued a revolutionary decision approving for the first time the use of 6-member panels in criminal cases. 399 U. S. 78, 103. In doing so, the Court turned its back on the original meaning of the Constitution, centuries of historical practice, and a "battery of this Court's precedents." *Khorrami*, 598 U. S., at \_\_\_ (slip op., at 6). Before *Williams*, this Court had said it was "not open to question" that a jury "should consist of twelve." *Patton* v. *United States*, 281 U. S. 276, 288 (1930). We had understood "the jury referred to in the original Constitution and in the Sixth Amendment is a jury constituted, as it was at common law, of twelve persons." *Thompson* v. *Utah*, 170

U. S. 343, 349 (1898). Really, given the history of the jury-trial right before *Williams*, it was nearly "unthinkable to suggest that the Sixth Amendment's right to a trial by jury is satisfied" by any lesser number. *Williams*, 399 U. S., at 122 (Harlan, J., concurring in result).

Yet *Williams* made the unthinkable a reality. In doing so, it substituted bad social science for careful attention to the Constitution's original meaning. Pointing to academic studies, *Williams* tepidly predicted that 6-member panels would "probably" deliberate just as carefully as 12-member juries. 399 U. S., at 100–102. But almost before the ink could dry on the Court's opinion, the social science studies on which it relied came under scrutiny. See, *e.g.*, H. Zeisel, . . . And Then There Were None: The Diminution of the Federal Jury, 38 U. Chi. L. Rev. 710, 713–715 (1971). Soon, the Court was forced to acknowledge "empirical data" suggesting that, in fact, "smaller juries are less likely to foster effective group deliberation" and may not produce as reliable or accurate decisions as larger ones. *Ballew* v. *Georgia*, 435 U. S. 223, 232–235 (1978) (plurality opinion). All in all, *Williams* was an embarrassing mistake—"wrong the day it was decided." *Khorrami*, 598 U. S., at ___ (slip op., at 1).

Respectfully, we should have granted review in Ms. Cunningham's case to reconsider *Williams*. In the years since that decision, our cases have insisted, repeatedly, that the right to trial by jury should mean no less today, and afford no fewer protections for individual liberty, than it did at the Nation's founding. See, *e.g.*, *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000); *Ramos* v. *Louisiana*, 590 U. S. 83 (2020). Repeatedly, too, our cases have warned of the dangers posed by the gradual "'erosion'" of the jury trial right. *Apprendi*, 530 U. S., at 483 (quoting *Jones* v. *United States*, 526 U. S. 227, 248 (1999)). Yet when called upon today to address our own role in eroding that right, we decline to do so. Worse still, in the last two years we have now twice turned away thoughtful petitions asking us to correct our

mistake in *Williams*. See *Khorrami*, 598 U. S., at \_\_\_ (slip op., at 10).

If there are not yet four votes on this Court to take up the question whether *Williams* should be overruled, I can only hope someday there will be. In the meantime, nothing prevents the people of Florida and other affected States from revising their jury practices to ensure no government in this country may send a person to prison without the unanimous assent of 12 of his peers. If we will not presently shoulder the burden of correcting our own mistake, they have the power to do so. For, no less than this Court, the American people serve as guardians of our enduring Constitution.