Evangelista Berríos Córtés, Petitioner and Appellant, *v.* Sixto M. Saldaña, Warden of Insular Penitentiary, Respondent and Appellee.

No. 8424. Argued February 5, 1942.—Decided February 13, 1942.

*Ernesto Mieres Calimano* for appellant. *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *L. Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is an appeal taken by Evangelista Berríos Córtés, a convict, from an order of the District Court of San Juan denying his petition for *habeas corpus.*

In his original petition the appellant alleged that he was confined in the Insular Penitentiary under a twelve-year sentence imposed upon him by the District Court of Arecibo for murder in the second degree. As ground for his discharge he pleaded that he had not been assisted by counsel.

The writ was issued and after a hearing the district court rendered judgment in the following terms:

"On reading the petition and the return and after hearing the petitioner and the district attorney of this court, the petition is denied, as it appears from the evidence that the petitioner was

assisted by an attorney appointed by his relatives, and there is no evidence tending to show that said attorney or the petitioner had been refused time for preparing an adequate defense.

"See the case of *Macomber* v. *Hudspeth*, 115 F. (2d) 114, and other cases therein cited. In said case it was held that even where an accused has pleaded guilty without being represented by counsel, he is presumed to have waived such right, and that the evidence in a proceeding of this kind should clearly and convincingly show that he had not waived intelligently his right to be assisted by counsel.

"The case of *People* v. *Muriel*, 57 P.R.R. 896, is not applicable to the case at bar. In said case the court appointed an attorney who was shown not to have had an opportunity to prepare a proper defense. In the case at bar the counsel for the defendant had been engaged by a brother of the latter, and said counsel did not inform the court that he was not prepared to defend the accused nor did he apply for time to make such preparation."

The appellant maintains that the foregoing judgment is contrary to law and the decisions, and against the evidence. The judgment rendered by the District Court of Arecibo on March 8, 1937, reads as follows:

"This day this cause was called for trial, and the People of Puerto Rico appeared by the district attorney, and Evangelista Berríos, defendant, was assisted by Attorney Angel Muñoz Igartúa.

"The jury having been duly constituted and the accused arraigned, the latter pleaded guilty to murder in the second degree and the district attorney acquiesced therein. The court, in view of said plea and the district attorney's consent thereto, instructed the jury to return a verdict in accord with the said plea.

"Said verdict having been rendered, the court adjudges said Evangelista Berríos guilty of murder in the second degree, and at his request, he having waived the legal term within which to pass sentence on him and, on the contrary, requested that sentence be pronounced forthwith, the court proceeds to do so and sentences said Evangelista Berríos to twelve years in the penitentiary at hard labor, which he shall serve in the Insular Penitentiary of Puerto Rico.

"It is hereby ordered that said defendant be immediately taken to said Insular Penitentiary of Puerto Rico and there delivered, with a certified copy of this sentence, to the warden of that institution to be kept and confined therein until said sentence shall have been served."

The evidence introduced by the petitioner at the hearing of the petition consisted of the testimony of Attorney Angel Muñoz Igartúa and of his own testimony.

The attorney's testimony, literally transcribed, reads as follows:

"Q. By the leave of the court, what is your name?—A. Angel Muñoz Igartúa.—Q. What is your profession?—A. Attorney at law. —Q. Besides that, do you fill any other office?—A. At present I am the Mayor of Manatí.— Q. Do you know petitioner Evangelista Berríos Cortés?—A. I do.—Q. When did you become acquainted with him? —A. Well, I became acquainted with him at the trial of the case in the District Court of Arecibo.—Q. Was it on the morning of your intervention in the case that you saw the defendant, or when was it?—A. I was in Manatí, in my office, on that morning, in my law office, and a brother of his whom I had known before came and was the bearer of a recommendation from a friend in Ciales asking me to go to Arecibo to enter a plea of guilty on behalf of his brother. I went with him and he then pointed out his brother to me. I beckoned to him and told him the purpose of my trip. The accused and his brother told me that the matter had been settled, that he was going to be sentenced to twelve years in the penitentiary. The original charge was one of murder in the first degree, and the district attorney was going to consent to the lowering of the charge to murder in the second degree. And when the case was called, I presented the motion to the judge, stating that the accused, through me, admitted the charge if the same was lowered to murder in the second degree; and he was sentenced to a term of twelve years in the penitentiary.—Q. Were you not acquainted with the facts of the case?—A. Not at all.—Q. Did you not. . . ?—A. Just what the accused's brother had told me.—Q. What he told you that very day in the morning?—A. Just what he told me that very day in the morning.—Q. Do you mean to say that you did not know the defendant either?—A. I was not acquainted with him.—Q. Did you see him there in court?—A. I saw him that day for the first time.— Q. And all you did was to assist him in entering a plea of guilty? —A. What I did for him was a friendly favor to the family and of a political nature, and to a friend in Ciales who recommended him to me.—Q. Did you see the accusation in the case?—A. Well, I heard it read by the clerk of the court, when he was arraigned.—Q. Attorney Mieres Calimano: That is all.—The Court: Q. When you en-

tered the plea of guilty on behalf of this petitioner, did you inform the court that you had not studied the case or that you were not acquainted with the facts? — A. I did not. — Q. You merely confined yourself to entering the plea of guilty?—A. I said to the defendant when I called him: 'Are you willing that I should enter for you a plea of guilty of murder in the second degree?'—and in view of his willingness . . . —Q. So that you did not request the court to grant you a term in order to prepare an adequate defense? —A. I did not request it, nor did the accused ask me to apply for it."

Petitioner's testimony literally transcribed reads as follows:

"Q. What is your name?—A. Evangelista Berríos Cortés.—Q. Are you the petitioner in the present case?—A. Yes, sir.—Q. Where are you confined?—A. In the penitentiary.—Q. Which court sentenced you?—A. The District Court of Arecibo.—Q. Now tell me the day when you were, when Attorney Muñoz Igartúa came to the court, had you already talked with anybody regarding your case?— A. I had agreed with the district attorney to accept twelve years.— Q. On the day you went to the court to be arraigned, were you represented by counsel?—A. No, sir.—Q. Did not the court then appoint an attorney to assist you?—A. No, sir.—Q. During all the time between your arrest until the trial, were you out on bail at any time?—A. No, sir, I was in prison.—Q. Did any attorney call on you?—A. Nobody called.—Q. So that when Attorney Muñoz Igartúa arrived, you had already talked with the district attorney?—A. I had come to an agreement with the district attorney to accept a twelve-year sentence.—Q. How many grades did you pass in the school?—A. Six grades.—Q. Do you know what an information means?—A. No, sir.—Q. Do you know the requirements of an information?—A. No, Sir.—Attorney Mieres Calimano: That is all.— The Court: Mr. District Attorney.—District Attorney: No questions. —The Court: Q. Tell me, Evangelista, how long was it since you were arraigned until you made the agreement with the district attorney to accept a twelve-year sentence?—A. Well, the district attorney called at the jail.—Q. How many days after you were arraigned was it that the district attorney called at the jail?—A. About eight days.—Q. The district attorney called at the jail, what happened then?—A. He called on all those who were going to plead guilty, and I then asked him how much he would give me.—Q. Your plea of guilty depended, then, on the length of your term?—A. Yes,

because I did not have the means to pay for an attorney and was willing to make a deal with him, as the others did, and he then suggested to me twelve years and I said to him: 'Well, I accept,' and he promised to lower the charge against me from first degree to second degree murder.—Q. And did he lower the charge?—A. Yes, sir.—Q. Were you assisted by Attorney Muñoz Igartúa when you entered that plea of guilty?—A. No, sir.—Q. Was not he there with you?—A. Do you mean when I was arraigned?—Q. When you wanted to plead guilty.—A. Yes, sir.—Q. Was it your brother who procured such counsel for you?—A. Yes.—Attorney Mieres Calimano: Q. Then why did you plead guilty to that charge?—A. I pleaded guilty because I had agreed with the district attorney to accept a twelve-year sentence.—Q. But not because you were guilty?—A. Well, I told the district attorney that I would plead guilty provided he lowered the charge from first degree to second degree murder.—Q. Were you the only defendant covered by such information, or was there also another defendant charged with the same crime and on similar facts?—A. No, nobody else.—Q. And what about Juan Medina?—A. Juan Medina was charged with the same offense as I, but he did not go that day.—Q. In that same information, was Juan Medina jointly charged with you on the same facts?—A. Yes, sir.''

■ Less than a month ago, on January 19, 1942, the Supreme Court of the United States, in *Glasser* v. *United States*, again emphasized the duty of the courts to enforce the constitutional guarantee, to which every person accused of crime is entitled, of being assisted by counsel. One of the paragraphs of the opinion of the Court delivered by Mr. Justice Murphy reads as follows:

''Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. Speaking of the obligation of the trial court to preserve the right to jury trial for an accused, Mr. Justice Sutherland said that such duty 'is not to be discharged as a matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity.' *Patton* v. *United States*, 281 U. S. 276, 312–313. The trial court should protect the right

of an accused to have the assistance of counsel. 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.' *Johnson* v. *Zerbst,* 304 U. S. 458, 465.''

And then referring to the particular case under consideration, it concluded thus:

''No such concern on the part of the trial court for the basic rights of Glasser is disclosed by the record before us.''

. Led by the same principles, we reach a similar conclusion in the instant case, which reveals not only the absence of legal assistance to the accused but also a censurable practice which should not be followed.

 The petitioner in his petition for *habeas corpus* indicated, and at the hearing definitely stated under oath, that at the time of his arraignment he was not represented by counsel; that the court failed to appoint counsel for him on that occasion.

His testimony was neither objected to nor controverted. An information for murder was involved and not only was there a failure to comply with either the Federal Constitution or the Organic Act but also with the criminal procedural law. —Section 141, Code of Criminal Procedure, 1935 ed., p. 104, an Act relating to the appointment of counsel in criminal cases, approved on March 9, 1905, Session Laws, p. 135—which expressly imposed upon the judge the unavoidable duty to see to it that the accused had the required legal assistance in that proceeding.

Repeated holdings have been made as to the effect of a failure to comply with such duty. It will suffice for us to quote from the syllabus of the case *Ex parte Resto,* 55 P.R.R. 700, as follows:

"A person accused of a felony has the right to be represented by counsel at the arraigment and to be informed of the existence of said right in his favor, before being required to answer or demur to the information.

"To uphold the conviction of a defendant not represented by counsel at the arraignment, and not informed of his right to have legal assistance, it is not enough that the defendant should have pleaded guilty. That admission, alone, is not equivalent to a waiver of said right. In order that, together with other circumstances in the case, it may have that effect, the court must go beyond such an admission and investigate if it was freely and voluntarily made."

But there is even more in the present case. What took place afterwards in the district jail between the district attorney, the defendant, and some other accused was a result of the lack of legal assistance and involved a censurable practice tending to becloud rather than to elicit the truth which is the aim of justice. There can be no assurance that every one will get his due, or that each case will be judged on its merits when resort is had to compromise and offers are made and passed between a district attorney and an ignorant prisoner within the very confines of the prison.

And not only is the existence of such a compromise under the circumstances which prevailed, according to the testimony of the petitioner, a reprehensible occurrence, but we can not comprehend how the district attorney could hold out a certain penalty without the judge's approval. If he was not sure of the latter, the district attorney made a false representation, and if he was, the blame fell not only on the district attorney but also on the judge who lent himself to making such procedure possible by promising to impose a penalty without a previous consideration of the merits of the case; which consideration could not be complete without first hearing the accused.

To add to the reproachful practice, notwithstanding the agreement previously made, and the knowledge that the ac-

cused would plead guilty, an absolutely superfluous trial by jury was resorted to.

It is insisted that, as the defendant ultimately appeared assisted by counsel, there was a compliance with the law. If only the facts recited in the judgment are taken into account, everything seems to have been done in proper form; but if we lift the apparent veil, what do we see? Then the absolute lack of legal assistance in the case is rendered still more evident, then another unfulfilled duty becomes manifest: that of the attorney who agrees to intervene *pro forma,* without first ascertaining whether or not his action is right or is justified by the attendant circumstances.

What became manifest from the testimony of the petitioner herein, what stood out from it, is something which does not speak favorably of the officers who intervened in the case and which should be openly censured, as it is now censured by us, so that it should not develop into a practice that would cause such a significant constitutional guarantee to become a dead letter among us.

From whatever aspect the case may be viewed, either because the accused was not assisted at all by counsel when arraigned, or because he was not so assisted in fact when he pleaded guilty, without being informed of his right or without intelligently waiving the same at any time, the appeal must be sustained and, consequently, the judgment appealed from must be reversed and another rendered instead, directing the immediate discharge of the prisoner because of the lack of jurisdiction in the rendition of the judgment under which he is detained by the respondent, all this without prejudice to any right on the part of the People of Puerto Rico to prosecute the petitioner for the crime charged against him.