UNITED STATES of America, Plaintiff–Appellee,

v.

John MENDEZ, Defendant–Appellant.

No. 95–20002.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1996.

Rehearing Denied Jan. 13, 1997.

Jeffery Alan Babcock, Paula Camille Offenhauser, U.S. Attorney's Office, Houston, TX, for plaintiff-appellee.

David Steven Coale, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, for defendant-appellant.

Before REYNALDO G. GARZA, JOLLY and DeMOSS, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

The defendant, John Mendez,[1] appeals from a district court order denying his motion to suppress certain evidence from being introduced at his trial and from a judgment

[1] We note that the spelling of his first name in the case caption has changed between the time

of conviction on a narcotics charge, entered following a bench trial. We affirm in part, reverse in part, and remand the case for a jury trial.

## I.

On March 10, 1993, police officers stationed themselves at Houston's Hobby Airport to observe the passengers boarding TWA's 12:37 p.m. flight to New York. The officers became suspicious of Mendez, a passenger on that flight, and proceeded to have a drug-detecting dog test a suitcase that Mendez checked as luggage on the flight. The dog alerted to the suitcase, indicating the presence of drugs inside. Upon hearing of this, two officers boarded the plane to speak with Mendez. Because Mendez indicated he could not speak English, the officers spoke in Spanish, identifying themselves to him as police officers. Mendez reluctantly produced his ticket when the officers asked if they could see it but denied having any form of identification on him. He also denied having any idea why a dog would alert to his suitcase. The officers asked him if he would leave the plane and accompany them to the suitcase, which he agreed to do. When he was shown the suitcase, he denied it was his. A comparison of the number on the claim check attached to his ticket with the number on the suitcase revealed the same number, but Mendez continued to deny ownership. Believing the suitcase was abandoned because of this denial, the officers pried the lock and opened it. Wrapped in sleeping bags, sheets of Bounce fabric softener, and coffee grounds were fourteen bundles of a white substance in plastic bags. A field test revealed the substance to be cocaine. The officers placed Mendez under arrest at this time and read him his *Miranda* warnings.

A grand jury indictment charged Mendez with possession of five or more kilos of cocaine with the intent to distribute, a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Mendez moved the district court to suppress the cocaine, arguing that it came as the fruit of both an arrest made without probable

this case was here in 1994 and today.

cause and an arrest made without the reading of Mendez's *Miranda* warning. Following a suppression hearing, the district court ruled that the search was illegal and ordered the suppression of the contents of the suitcase as well as certain statements made by Mendez. The government appealed. We reversed that part of the district court's order suppressing the contents of the suitcase and remanded the case for further proceedings. *United States v. Mendez,* 27 F.3d 126, 131–32 (5th Cir.1994) ("*Mendez I* ").

Approximately a month after the mandate issued on *Mendez I,* the district court held a pre-trial conference at which it stated that if the parties did not enter into a plea agreement by September 7, it would set the case for a bench trial. Because no agreement was reached, the court informed the attorneys on September 9 that it had scheduled a bench trial for September 15. On September 12, Mendez filed a second motion to suppress. The government sought summary denial of the motion, arguing that our opinion in *Mendez I* disposed of all the issues Mendez raised in this second motion. In preparation for the bench trial, the government and Mendez's counsel, Peter Heckler, entered into written stipulations relating to the introduction of evidence at trial. On September 15, the parties appeared before the court on the second motion to suppress and for the bench trial. The court denied Mendez's second motion to suppress and proceeded with the bench trial.

At the conclusion of the trial, the court found Mendez guilty of the charged offense. At this time, someone on the court's staff informed the court that Mendez had not completed the written waiver of jury trial, required by Rule 23(a) of the Federal Rules of Criminal Procedure. The court asked Heckler if Mendez had signed the waiver, "in conformity with the pretrial conference." Heckler replied that Mendez had not signed the waiver and that the bench trial was "a surprise" to Mendez. He explained that he had not discussed the issue of waiver with

Mendez because "I wasn't sure that we were going to trial, because there was a motion to suppress," and because he was having trouble getting his interpreter into the Harris County Jail to speak with Mendez.[2] The court offered to try the case before a jury the next morning and called a fifteen minute recess to allow Heckler to consult with an appellate specialist as to the course in which he should proceed.

After the recess, Heckler stated that Mendez would not sign the waiver form and, given that Mendez had been found guilty by the court, "it would be absolutely unethical and illegal malpractice for me to advise my client to sign that form." The court noted that it had proceeded under the assumption that jury trial had been waived because of Heckler's representations to that effect. Heckler agreed that he had given that impression to the court, but reiterated that Mendez himself had not waived his right. The court then swore Mendez as a witness and commenced an examination of him. Mendez's answers, through an interpreter, revealed that he was from a small town in Columbia and had been in the United States for only eight days before the arrest. He had eight years of schooling and was literate only in Spanish. His answers to the court's questions about the proceedings reveal that he had little understanding of what was transpiring and that he had infrequent contact with his lawyer. He stated that he never discussed with him whether to opt for a jury trial and, in fact, disclaimed any knowledge of what a jury was.[3]

The court then made the following statement in which it ruled that Mendez waived his constitutional right to a jury trial:

Under these circumstances, the most profound understanding that a defendant can have of his rights under the American system is through counsel. It is not possible for the court to only operate when a young, badly-educated alien defendant learns the subtleties of a sophisticated, complicated system of jurisprudence de-

---

2. Heckler later "search[ed his] memory" and recalled having discussed the issue of waiver with Mendez approximately a year and half earlier, in the spring of 1993.

3. The court asked Mendez if he had ever watched reruns of Perry Mason on television as a child. Mendez replied that he had not.

signed to protect the accused and their fellow citizens from abuses of power by the government, in this · regard, specifically with prosecutorial abuse, and coerced, truncated proceedings. *Under the circumstances of this case, I find that Mr. Mendez has made as knowing a waiver of his right to a trial by jury as it is humanly possible for him to make based on his limited possible understanding.* And, obviously, I find counsel made an effective complete waiver, which was difficult to argue anything other than in Mr. Mendez's best interest that he make it under the circumstances of this case with an appellate opinion mandating the admission of 11 or more pounds of cocaine seized from the accused by living eyewitness police officers.

The idea that Mr. Mendez was prejudiced by not having a more sympathetic trier of fact is untenable. Obviously, the result, from his perspective, is unfortunate, that the proceedings have been extraordinarily considerate of his personal and legal position. It does not seem to me to be the least bit peculiar that he would consent to trial before a judge who had taken the heart out of the government's case and bounced them around the room a little bit. Whether he thought he was going to be acquitted on the facts or even, for that matter, knows what being acquitted on the facts is is more of a problem. But he has known for 14 months that the Judge has rigorously required the government to do its job. I think its fair to infer that he had accepted that procedure and was not looking for additional procedural safeguards and counsel knew of the practical futility, advised him and the court of that, which position we have been operating on or the last three months. *Therefore, there will be no jury trial tomorrow, there will be no additional proceedings this afternoon, there will be a sentencing in December.*

Supp.R.Vol. II, pp. 81–82 (emphasis and paragraph break added).

The next day, the government moved the court to reconsider its ruling that Mendez had waived his right to trial by jury, "to admonish to [sic] Mendez as to his right to a trial·by jury, and to determine whether Mendez intends· to exercise his right to a new trial by a jury." Mendez's attorney, however,· *opposed* the motion, insisting that the matter was "now an appellate issue," and that the government should not be allowed to "muddy that particular issue." Although the government argued that Mendez's attorney was playing a tactical game designed to delay the onset of another trial, the court denied the government's motion. Mendez now appeals his conviction on the ground that he never waived his right to a jury trial.

## II.

■ The first issue we address is Mendez's claim regarding his alleged denial of a jury trial. The government first contends that Mendez, by his silence, impliedly waived his right to jury trial. If we find that he did not, it asserts that Mendez is without remedy on appeal because he neither objected to the commencement of the bench trial nor moved for a new trial after the error was discovered. We address the government's contentions in turn.

Federal Rule of Criminal Procedure 23(a) provides that "[c]ases required to be tried by a jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." The Constitution, under both Article III[4] and the Sixth Amendment,[5] required this case to be tried by a jury. It is undisputed that, as there was no written waiver signed by Mendez, there was not compliance with the literal mandate of the Rule. A limited exception exists, however, and it is by means of this exception that the government argues waiver has occurred.

*United States v. Page,* 661 F.2d 1080 (5th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1713, 72 L.Ed.2d 136 (1982), involved a former university biology professor who was

---

**4.** "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury." U.S. Const. art. III, § 2, cl. 3.

**5.** "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." U.S. Const. amend. VI.

being tried for mail fraud. Page did not execute the written waiver required by Rule 23(a) nor did he take any other affirmative action to signify that he was waiving his right. Right before a jury trial commenced, however, his lawyer attended a chambers conference with the trial judge. His lawyer stated to the judge that he and his client had thoroughly discussed the matter and that Page wished to waive his right to a jury trial, believing that a bench trial was preferable. Upon returning to the courtroom, the judge stated, in Page's presence, that he understood Page to be waiving his right to a jury. Page's lawyer responded that the court's statement was correct. The government and the court agreed to the waiver and the case was submitted as a bench trial. Page voiced no objection. Following his conviction, Page sought to have his conviction overturned because of non-compliance with Rule 23(a). We affirmed his conviction, although not without some misgivings, noting that Page and his counsel invited the court to commit the error through their silence and representations, respectively. The district court in *Page* "did what Page, explicitly by counsel and implicitly by his own conduct, asked it to do. Page will not now be heard to say that the court fell into technical error in the process of effectively carrying out his request. To do so would be to make of the courtroom a bear-garden, casting the trial judge as the bear." *Id.* at 1083. Of critical importance in that case was the character of Page, "a highly educated and articulate man, who in no way exhibits objection or surprise as his counsel waives jury trial on the record and the venire is dismissed."

*Page* is readily distinguished from the present case. First, Mendez hardly meets the description we ascribed to Page. Instead of a professor of parasitology, he is a purported drug mule carrying out the physical act of ferrying cocaine to New York. While the district court did not make specific findings of fact as to Mendez's background, the record contains a fair amount from which some clarity emerges. Mendez's testimony revealed that he was unable to speak or understand English, that he had only been in the country for a few days, that he came from a poor family in rural Colombia, and

that he did not understand the purpose of a jury. He also claimed to have not spoken with his lawyer about waiver. We fully acknowledge that the record contains evidence to the contrary which tends to suggest that he was much more sophisticated than he let on. In fact, the district court at one point stated that "I don't know that I buy the characterization [that] Mr. Mendez is this waif from the rural countryside of South America that drifted into this courtroom and was unfamiliar with anything that was going on...." Even assuming that Mendez was not as unsophisticated as he let on, he is still a far cry from Professor Page.

Second, the process by which waiver is alleged to have occurred is different. In *Page,* the district court was prepared to begin a jury trial when it was informed by Page's counsel that Page wanted the court to judge the facts of the case. Here, by contrast, the initial arrangement made by the court was for a bench trial, not a jury trial; Mendez thus did not have the same opportunity to voice his objection to the dismissal of a venire. We do not know why the court proceeded as though a bench trial was the default option in this situation, as that is clearly incorrect. In any event, this also distinguishes *Page*. The exception announced in *Page* is a limited one, the requirements of which are not met by the facts in this case. We find that the non-compliance with Rule 23(a) was error.

■ In addition to being a transgression of rights afforded him by Congress, the court's decision to proceed with a bench trial without Mendez's specific acquiescence also runs afoul of the Constitution. In *Patton v. United States,* 281 U.S. 276, 312, 50 S.Ct. 253, 263, 74 L.Ed. 854 (1930), the Supreme Court held that a defendant may waive his right to a jury trial, but the waiver must be express and intelligent. Failure to proceed in this manner violates a defendant's right to due process as guaranteed by the Fifth Amendment. Although the district court found that Mendez waived his right to jury trial, the legal basis it employed is erroneous. It reasoned that because Mendez was young, poorly educated, and ignorant of the "subtleties of a sophisticated, complicated system of

jurisprudence," his limited understanding of the right was sufficient to find a waiver. The proper standard requires an "intelligent" waiver, let alone one that is express. We therefore reject the findings of the district court and find that Mendez did not waive this constitutional right. The unambiguous requirements of Rule 23(a) were not met in this case, and the limited exception established by *Page* does not apply. Accordingly, we remand the case for a trial by jury.

### III.

■ We turn to Mendez's claim that the district court erred in refusing to grant his renewed motion to suppress the cocaine seized by the police at the airport. The police searched the suitcase and seized the contents without a search warrant, under the belief that Mendez had "abandoned" the suitcase when he disclaimed ownership of it. Mendez obtained relief from the district court on his first motion to suppress under the alternative theories of fruit of an illegal arrest and fruit of the violation of his *Miranda* rights. In *Mendez I,* we reversed the lower court, holding that its theory of involuntariness was legally incorrect and noting that because Mendez did not testify at the suppression hearing there was no evidence that his abandonment of the suitcase was coerced, uninformed, or otherwise involuntary. We ordered the following:

> [T]he district court's order of suppression is REVERSED except insofar as it suppressed the statements made by Mendez after he was taken off the plane but before he was informed of his *Miranda* rights, and the case is REMANDED for further proceedings.

*Mendez I,* 27 F.3d at 131–32. Following the remand, Mendez filed another motion to suppress. The district court denied the motion, believing the "law of the case" doctrine precluded reexamination of the issue.

On appeal, Mendez claims that new evidence—Mendez's own testimony at trial—reveals that the cocaine should have been suppressed and that his conviction must therefore be reversed because it rests on insufficient evidence. In the alternative, he urges us to remand the case to the district court for further consideration, supplying it also with guidance as to the proper legal standard to apply when the evidence tends to show a coercive, uninformed, or involuntary abandonment. We find that the district court properly denied the renewed motion.

■ The doctrine of the law of the case "expresses the practice of courts generally to refuse to reopen what has been decided." *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). The doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983). While not as inflexible as the rules of issue and claim preclusion, the law of the case doctrine nonetheless creates a strong presumption of finality within the case, resting "on the salutary and sound public policy that litigation should come to an end." *White v. Murtha,* 377 F.2d 428, 431 (5th Cir.1967). The issue here, whether the police unlawfully obtained the contents of the suitcase requiring the evidence to be suppressed, was squarely decided by us in *Mendez I* and is therefore subject to the doctrine. We have recognized exceptions where the evidence elicited in a subsequent trial was substantially different, where the controlling law has since changed, or where the previous decision was clearly incorrect and would work a manifest injustice under the circumstances. *Id.* at 431–32.

Mendez seeks relief under the first exception. When we decided *Mendez I,* the only evidence in the record regarding Mendez's abandonment of the suitcase was the testimony of one of the arresting officers, given at a suppression hearing held by the district court. Mendez did not testify at this hearing. It was upon this record that we based our decision that Mendez had abandoned the suitcase, thereby making the search of it legal. Mendez now argues that, in light of the testimony he gave at his trial, the evidence before us is "substantially different," requiring us to review this issue once more. The exception claimed by Mendez does not apply, however, where the prior appeal does

not leave the issue open for decision in the lower court. *National Airlines, Inc. v. International Ass'n of Machinists*, 430 F.2d 957, 960 (5th Cir.1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed.2d 440 (1971). Because this is exactly what occurred here, we decline Mendez's invitation to revisit our resolution of this issue.

### IV.

For the foregoing reasons, we reverse the district court's judgment of conviction and remand this case for Mendez to be tried by a jury. We affirm the district court's order denying Mendez's renewed motion to suppress.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.