IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20664

Summary Calendar
_____


UNITED STATES OF AMERICA

Plaintiff – Appellee

v.

FREDERIC ERWIN WATTS

Defendant – Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 00-CR-840-1
_____

June 26, 2002

Before KING, Chief Judge, and HIGGINBOTHAM and BENAVIDES, Circuit
Judges.

PER CURIAM:[*]

Defendant Frederic Erwin Watts appeals his conviction and
sentence for violations of 18 U.S.C. §§ 371, 2113, and 924
(1994).  For the reasons that follow, we AFFIRM the defendant's
conviction and sentence.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  Factual and Procedural History

On November 2, 2000, Braylon Cloud and Roderick Sanders entered the Carmine State Bank in Carmine, Texas, and demanded money from the tellers.  Sanders carried a rifle during the course of the robbery.  After obtaining money, the two men fled the scene in a vehicle driven by the defendant, Frederic Erwin Watts.  Police subsequently stopped the vehicle and arrested all three men, recovering $17,249 in the process.  On November 29, 2000, a federal grand jury indicted Watts, Cloud, and Sanders on charges of conspiracy to commit bank robbery, conspiracy to use and carry a firearm during a bank robbery, bank robbery, and carrying a gun in the course of a crime of violence, in violation of 18 U.S.C. §§ 371, 2113, and 924.

On March 6, 2001, the district court held a hearing on a motion to suppress filed by Watts.  During the hearing, Watts testified that the post-arrest statements he made to law enforcement officers should be suppressed because he had not waived his right to counsel prior to making the statements.  The district court denied the motion to suppress.  Immediately following this ruling, defense counsel Dick Wheelan approached the bench, and the following dialog ensued:

```
THE COURT:     Mr. Wheelan.
MR. WHEELAN:   Mr. Watts has indicated that
               he wants to proceed to a Court
               trial and he wants to waive a
               jury.
THE COURT:     Okay.
```

```
MR. WHEELAN:      I haven't – since the
                  statement has just been
                  admitted, I haven't had a
                  chance to ask him again.  If
                  the Court wants to give me a
                  minute, I'll ask him if he
                  wants to reconsider, but I
                  doubt if he will.
THE COURT:        Okay . . . .
```

The court and counsel then briefly discussed the witnesses.

After the dialog at the bench concluded, the proceedings in open

court continued as follows:

```
THE COURT:        What are we going to do,
                  lawyers?  Are we ready to
                  proceed?
MR. WHEELAN:      Yes, Your Honor.
MR. SMITH [the prosecutor]:  Yes, Your Honor.
THE COURT:        Okay.  All right.  Then who's
                  your first witness that you
                  wanted to –
MR. SMITH:        Braylon Cloud.  He's in the
                  custody of the marshal.
THE COURT:        All right.  Call and get
                  Braylon Cloud down.  Mr.
                  Wheelan, I understand that
                  we're proceeding to a bench
                  trial and that Mr. Watts has
                  agreed to waive his right to a
                  jury in this case; is that
                  correct?
MR. WHEELAN:      That's correct, Judge.
THE COURT:        Is that correct, Mr. Watts?
THE DEFENDANT: Yes.
MR. WHEELAN:      Your Honor, my client is in
                  his jail garb.  His mother
                  brought clothes for him
                  yesterday.  Originally we were
                  set to go yesterday morning.
                  And I understand she's in the
                  court today.
DEFENDANT'S MOTHER:  I am.
MR. WHEELAN:      Do you have the clothing with
                  you ma'am?
DEFENDANT'S MOTHER:  Yes.
```

THE COURT:     Well, I don't know if it is
               that big of an issue when we
               don't have a jury involved.
               Obviously if we were going to
               have a jury trial, I think it
               would be important to make
               sure that the defendant was
               not dressed in his jail
               clothing.  But given the fact
               that we're just going to
               proceed with a trial to the
               Court, that is not as much of
               an issue or an issue at all, I
               guess, in terms of the Court
               trial.  So, I think we can go
               ahead and proceed with that.

The district court then proceeded with a bench trial without obtaining from Watts a written waiver of a jury trial.  The court found Watts guilty on all four counts charged in the indictment and sentenced Watts to concurrent terms of 70 months of imprisonment for the first three counts and a consecutive term of 84 months of imprisonment for the remaining count, for a total of 154 months of imprisonment.  In addition to the prison sentence, the district court sentenced Watts to five years of supervised release, a $400 special assessment, and restitution of $1000.  Watts timely appealed to this court.

## II.  Discussion

Federal Rule of Criminal Procedure 23(a) dictates that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."  FED. R. CRIM. P. 23(a).  The United States Constitution requires Watts's case to

4

be tried by a jury.  See U.S. CONST. Art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury."); see also id. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . .").  Despite the explicit language of Rule 23(a), this court recognizes a "limited exception" to that rule's requirement that a waiver of a jury trial be in writing. United States v. Mendez, 102 F.3d 126, 129 (5th Cir. 1996). Although a defendant may orally waive a jury trial under this limited exception, to be effective, the oral waiver must be express and intelligent.  Id. at 130-31; see also Patton v. United States, 281 U.S. 276, 312 (1930), overruled on other grounds by Williams v. Florida, 399 U.S. 78, 92 (1970).

Watts concedes that his oral waiver of a jury trial was express.  Watts argues, however, that the district court erred in failing to determine whether his oral waiver was intelligent, and thus erred in proceeding with a bench trial.  Watts argues that the record sheds no light on whether he intelligently waived his right to a jury trial.  In doubtful situations, Watts asserts, courts must find that no waiver was made.  The government counters that the record shows that Watts was well aware of his right to a jury trial and that he consented to the waiver of that right.  Thus, the government asserts that the district court did not err when it conducted a bench trial.  The adequacy of a jury waiver is a mixed question of law and fact which we review de

5

novo.  <u>United States v. Farris</u>, 77 F.3d 391, 396 (11th Cir. 1996); <u>see</u> <u>also</u> <u>United States v. Christensen</u>, 18 F.3d 822, 824 (9th Cir. 1994).

In <u>United States v. Page</u>, 661 F.2d 1080 (5th Cir. 1981), this court recognized a limited exception to the written waiver requirement of Rule 23(a).  In <u>Page</u>, trial counsel for a former university professor on trial for mail fraud informed the court in chambers that, after considerable thought, counsel and the defendant had decided to proceed with a bench trial.  <u>Id.</u> at 1080-81.  Upon returning to the courtroom, the district court asked on the record if the defendant wished to waive a jury trial, and defense counsel, but not the defendant, answered affirmatively.  <u>Id.</u> at 1081.  On appeal, the defendant argued that his oral waiver was invalid under Rule 23(a).  <u>Id.</u> at 1080-81.  This court held that the oral waiver was valid and that the trial court was entitled to rely on the representations of defense counsel.  <u>Id.</u> at 1083.  In reaching this holding, this court reasoned that the defendant was "a highly educated and articulate man" who "suffer[ed] neither language nor perceptive difficulty" and who "in no manner exhibit[ed] [an] objection or surprise as his counsel waive[d] [a] jury trial on the record." <u>Id.</u> at 1082, 1083.  This court concluded that the district court "did what [the defendant], explicitly by counsel and implicitly by his own conduct, asked it to do. [The defendant] will not now

6

be heard to say that the court fell into technical error in the process of effectively carrying out his request." Id. at 1083.

In the instant case, the government argues that Watts, like the defendant in Page, intelligently and expressly waived his right to a jury trial even though he failed to sign a written waiver. Watts counters that this court's decision in Mendez controls the outcome of this case. In Mendez, the defendant was indicted for possession with intent to distribute cocaine. 102 F.3d at 127. Immediately after a suppression hearing and without a written waiver of a jury trial, the district court in Mendez conducted a bench trial. Id. at 128. The district court proceeded "as though a bench trial was the default option in [the] situation" and did not give the defendant an "opportunity to voice his objection to the dismissal of a venire." Id. at 130. Defense counsel initially stated he had not discussed waiving a jury trial with the defendant but later stated he recalled discussing the issue eighteen months earlier. Id. at 128 & n.2. Relying on Page, the government argued that the defendant impliedly waived his right to a jury trial, but this court found Page distinguishable. Id. at 130. This court noted that the character of the defendant in Page had been "[o]f critical importance" in the court's decision. Id. Unlike the educated and articulate defendant in Page, the defendant in Mendez was from a poor family in rural Columbia, could not speak or understand English, did not understand the purpose of a jury,

7

had been in this country only a few days before his arrest, and claimed to have not spoken with his lawyer about a waiver. Id. After concluding that the defendant's character "was a far cry" from that of the professor in Page, the Mendez court reversed the defendant's conviction and remanded the case for a jury trial. Id. at 130, 132.

Contrary to Watts's assertions, Mendez is readily distinguishable from the instant case. The record reveals that, unlike the defendant in Mendez, Watts had no difficulty speaking or understanding English. In fact, Watts articulately testified on his own behalf during the suppression hearing immediately prior to his oral waiver of a jury trial. Moreover, while the defendant in Mendez came from a poor Columbian family and had only been in the country for a few days prior to his arrest, Watts had previously been employed as a supervisor's assistant in the shipping/receiving department of Dell Computers, and he even owned Dell stock. Although he did not graduate from high school, Watts completed the eleventh grade. Watts further reported to the probation department that he was competent in computer programming. Thus, Watts is significantly more sophisticated and knowledgeable than the defendant in Mendez. Most importantly, the district court in this case, unlike the court in Mendez, did not proceed as if a bench trial was the only option. Rather, the district court ascertained that defense counsel and Watts had previously discussed the issue and had decided to waive a jury

8

trial.  After giving defense counsel a chance to confirm Watts's desire to waive a jury trial, the district court questioned defense counsel and Watts in open court regarding that desire. For these reasons, the result in <u>Mendez</u> is not controlling in the instant case.

We find that the facts of this case fall with the limited exception to the requirement of a written waiver announced in <u>Page</u>.  Like in <u>Page</u>, defense counsel Wheelan clearly stated to the court that Watts wished to waive a jury trial.  The record suggests that Watts and Wheelan had previously discussed waiver and that the district court gave Wheelan a moment to confirm the waiver with Watts immediately prior to commencing the bench trial.  As in <u>Page</u>, the district court in this case then asked Wheelan and Watts in open court if Watts had agreed to waive his right to a jury trial.  Both Wheelan and Watts answered affirmatively.  Then Watts stood silent while the court discussed the fact that Watts need not change out of his prison clothes for a bench trial.  These facts suggest that, like the defendant in <u>Page</u>, Watts intelligently waived his right to a jury.  By conducting a bench trial, the district court merely did what Watts, both explicitly and implicitly, asked it to do.

Watts testified intelligently during the suppression hearing, discussed waiver of his right to a jury with defense counsel, responded orally in the affirmative when the district court asked him if he wanted to waive his right to a jury, and

9

listened without objection to the district court's comments unequivocally indicating that there would be no jury. Given these facts, we will not allow Watts to now claim that his waiver of a jury trial was not intelligently made. As we concluded in <u>Page</u>, Watts "will not now be heard to say that the court fell into technical error in the process of effectively carrying out his request." 661 F.3d at 1083. Accordingly, Watts's oral waiver of his right to a jury trial was valid, and the district court did not err by conducting a bench trial.

### III. Conclusion

For the foregoing reasons, we AFFIRM the defendant's conviction and sentence.