# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 2, 2010

No. 08-30631

Charles R. Fulbruge III
Clerk

ELLIOT J SCOTT, also known as Calvin Scott,

Petitioner – Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent – Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-6430

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

*Pro se* Petitioner-Appellant Elliot Scott, pursuant to a Certificate of Appealability issued by this court, appeals the district court's dismissal of his petition for a writ of habeas corpus. Scott contends that a state trial court denied his Sixth Amendment right to a jury trial. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-30631

## FACTS AND PROCEEDINGS

In 1997, Scott was convicted, after a bench trial, of simple robbery in violation of LA. REV. STAT. ANN. § 14:65. The Louisiana Fourth Circuit Court of Appeal summarized the underlying facts in its opinion affirming the conviction:

> On January 19, 1997, Elliott Scott (a/k/a Calvin Scott), the defendant, entered the Winn-Dixie grocery store on Almonaster Boulevard and got in the checkout line. When the cashier rang up a sale and opened the cash drawer, the defendant pushed ahead of the customer in front of him, jumped over the counter, grabbed cash from the drawer and attempted to flee. The cashier screamed, and this alerted the manager. The manager then ran after and apprehended the defendant, who had stuffed the cash in his mouth. When the police arrived, the manager was restraining the defendant on the ground in the store parking lot.

*State v. Scott*, 775 So. 2d 717 (La. Ct. App. 2000) (Table) ("*Scott I*").

Before the trial, the judge held an off-the-record bench conference with the prosecutor and Scott's defense counsel. The following exchange, which led to Scott's Sixth Amendment claim, followed:

> BY THE COURT:
>     All right.
>     Sir, you have a right to be tried before a Judge or a Jury.
>     Make your selection.
>
> BY THE DEFENDANT:
>     Judge, Your Honor.
>
> BY THE COURT:
>     All right.
>     You want a judge trial.
>     Are we prepared to go forward with this trial now?
>
> BY [THE PROSECUTOR]:
>     Yes, Judge.

No. 08-30631

BY [DEFENSE COUNSEL]:
      Yes, Your Honor.

After a short delay, the prosecutor made her opening statement. The judge then heard testimony from three witnesses for the prosecution. The defense rested without putting on any witnesses, the lawyers made their closing arguments, and the judge found Scott guilty as charged. Scott did not object to the absence of a jury at any point during the trial, and he has never claimed that he was coerced into accepting a bench trial. He does allege, however, that his attorney did not counsel him on the difference between bench and jury trials.

After Scott's conviction, the State filed a multiple bill of information alleging that the conviction made him a third-felony offender.[1] After an appeal on the third-felony issue, the state intermediate appellate court remanded the case with instructions to sentence Scott as a third-felony offender. In May 1998, the state trial court sentenced him to life imprisonment.

Scott appealed his conviction. He made six assignments of error, including a claim that the trial court erred by failing to ascertain whether he had knowingly and voluntarily waived his right to a jury trial. The state intermediate appellate court affirmed the conviction in an unpublished opinion.[2] It noted that Louisiana law allows defendants in non-capital cases to "'knowingly and intelligently waive a trial by jury and elect to be tried by the judge.'" *Scott I* at 7 (quoting LA. CODE CRIM. PROC. ANN. art. 780). "Where the trial judge personally advises the defendant in open court of his right to trial by jury, and defendant then personally states that he wishes to have trial before the judge," the court stated, "the evidence establishes that the defendant knowingly and intelligently waived his right to trial by jury." *Id.* (citing *State v. Sanders*, 567

---

[1] *See* LA. REV. STAT. ANN. § 15:529.1.

[2] *Scott I.*

No. 08-30631

So. 2d 177 (La. Ct. App. 1990)).  It found that Scott knowingly and voluntarily waived the right. *Id.*  The Louisiana Supreme Court denied Scott's applications for a supervisory writ without opinion.[3]

Scott applied for and was denied state post-conviction relief on his jury trial claim, among others.[4]  He then filed a petition for federal habeas corpus relief in the United States District Court for the Eastern District of Louisiana. The petition raised seven grounds for relief, including the jury trial claim.  A magistrate judge issued a report and recommendation recommending that Scott's claims be denied and that his petition be dismissed with prejudice. Scott objected.  The district court overruled his objections and adopted the report and recommendation, with one amendment not relevant here.  The court granted judgment in favor of the State and denied Scott's motion for a Certificate of Appealability.

---

[3] *State v. Scott*, 801 So. 2d 362 (La. 2001) (Table).  In *State ex rel. Scott v. State*, 799 So. 2d 499 (La. 2001) (Table), the Louisiana Supreme Court denied a second application for a supervisory writ that appealed sentencing issues not before this court.  Additionally, Scott initiated a separate direct appeal challenging his sentence.  That appeal, which also raised issues not before this court, was denied by the intermediate appellate court and the Louisiana Supreme Court; the United States Supreme Court subsequently denied Scott's application for a writ of certiorari.  *See State v. Scott*, 888 So. 2d 1170 (La. Ct. App. 2004) (Table); *State v. Scott*, 899 So. 2d 557 (La. 2005) (Table); *Scott v. Louisiana*, 546 U.S. 893 (2005) (Table).

[4] There is no record of a hearing or ruling by the state trial court.  The Louisiana Fourth Circuit Court of Appeal, however, accepted Scott's writ application.  In August 2006, it reviewed his post-conviction claims and denied them for failure to demonstrate entitlement to relief.  In June 2007, the Louisiana Supreme Court denied Scott's supervisory writ application without a written opinion.  *State ex rel. Scott v. State*, 958 So. 2d 1186 (La. 2007) (Table).  Scott made a third attempt to have his sentence reversed by filing motions to correct the sentence with the trial court in March 2007.  It does not appear that any action was taken, and the state intermediate appellate court subsequently sent the matter back to the trial court for a hearing.  The record does not reflect that these final motions were ever ruled on. Regardless, Scott exhausted his state habeas remedies as to the issue on which this court granted a COA before filing his federal habeas petition, and the state explicitly waived any exhaustion argument.  R. 399.

No. 08-30631

Scott timely noticed an appeal to this court. We granted him a Certificate of Appealability on the question whether he "expressly and intelligently waived his right to a jury trial."

## STANDARD OF REVIEW

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and review its conclusions of law de novo, applying the same standard of review to the state court's decision as the district court." *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002) (quotation omitted). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governed the district court's review of Scott's petition. Under AEDPA, when a federal habeas petitioner's claim has been adjudicated on the merits in a state court proceeding, a federal court must defer to the state court's decision unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Rogers v. Quarterman*, 555 F.3d 483, 488 (5th Cir. 2009).

When applying the "contrary to" clause of § 2254(d)(1), "a federal court may only grant habeas relief if the state court[5] decided a case differently than the United States Supreme Court previously decided a case on a set of nearly identical facts." *Taylor v. Cain*, 545 F.3d 327, 334 (5th Cir. 2008). When

---

[5] The state court did not rule on Scott's application for habeas relief in written opinions. But, because we review only "the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when, as in this case, state habeas relief is denied without an opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). In this situation, the court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law." *Id.*

applying the "unreasonable application" clause, "a court may grant habeas relief if the state court misapplied the relevant legal principles to the facts." *Id.* Because no United States Supreme Court case has facts nearly identical to those before us, Scott's appeal is governed by AEDPA's "unreasonable application" prong. *See id.* "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## DISCUSSION

The Constitution guarantees criminal defendants the right to a trial by jury for serious offenses. U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury"); *id.* at amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.");[6] *Duncan v. Louisiana*, 391 U.S. 145, 158 (1968) (holding that a jury trial is not constitutionally required for petty offenses). The Supreme Court has long recognized, however, that defendants have the right to waive a trial by jury. *Patton v. United States*, 281 U.S. 276, 297-99 (1930), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970).

More generally, the Court has held that the waiver of a constitutional right is not presumed, that the waiver must be knowing and intelligent, and that "courts [must] indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (quotation omitted); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 241-42 (1973). In *Brady v. United States*, the Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing,

---

[6] The Sixth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *See Gideon v. Wainwright*, 372 U.S. 335, 342-45 (1963).

intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." 397 U.S. 742, 748 (1970). The question whether waiver is proper "depend[s] on the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). Additionally, the waiver of a constitutional right cannot be presumed from a silent record. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969).

Scott argues that his decision to be tried by a judge rather than a jury was not knowing and intelligent because he did not understand, and was not sufficiently informed about, the consequences of the choice. Scott attributes his lack of knowledge to the court's failure to hold a more full colloquy that included a discussion of the number of community members that constitute a jury, the defendant's ability to participate in the selection of jurors, the requirement that a jury verdict be unanimous,[7] and the fact that the judge alone will decide guilt or innocence in the absence of a jury.

It is not clearly established, however, that the lack of a full colloquy invalidates an otherwise voluntary waiver. This court has held that the "decision to proceed with a bench trial without [the defendant's] specific acquiescence . . . runs afoul of the Constitution." *United States v. Mendez*, 102 F.3d 126, 130 (5th Cir. 1996). Scott, however, explicitly agreed to be tried by the judge rather than a jury. We have also found that there was no knowing and intelligent waiver when "[t]he trial transcript is devoid of any discussion between the court and petitioner concerning his express and intelligent waiver of a jury trial." *Landry v. Hoepfner*, 818 F.2d 1169, 1178 (5th Cir. 1987), *rev'd on other grounds by* 840 F.2d 1201 (5th Cir. 1988) (en banc) (holding that petitioner did not have an underlying Sixth Amendment right to a jury trial in the first instance). Here, though, the record is not silent. It shows that Scott

---

[7] In Louisiana, not all jury verdicts in non-capital cases require unanimity. *See State v. Mizell*, 938 So.2d 712, 717 (La. Ct. App. 2006).

was informed of his right to be tried by a jury or by a judge, and that he chose the latter. The manner in which the state court explained the jury right was, to be sure, far from ideal. Were we considering Scott's case in the first instance, whether he knowingly and intelligently waived his right to a jury trial would present a close question. But, given the deferential AEDPA standard under which we review state habeas decisions, we cannot say that the state court's determination that Scott validly waived his jury right applied clearly established federal law in an "objectively unreasonable" manner. *Bell v. Cone*, 535 U.S. 686, 699 (2002).

In support of his theory, Scott cites *Coronado v. Lefevre*, 748 F. Supp. 131 (S.D.N.Y. 1990). The *Coronado* court noted that, while the Second Circuit had not required a specific colloquy between the trial court and defendant to establish that a jury waiver was knowing and intelligent, "the Seventh Circuit requires that the trial judge explain to the defendant that a jury is composed of 12 members of the community, and that if a defendant waives a jury trial, a judge alone will decide his guilt or innocence." *Id.* at 141 n.14 (citing *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1175 (7th Cir. 1983).

In *DeRobertis*, however, the Seventh Circuit stated that its requirement that federal district courts explain several elements of the jury trial[8] to defendants before accepting a waiver was promulgated pursuant to the circuit court's "supervisory power over lower federal courts of the circuit." *Id.* at 1177-78. Even the district court, which *DeRobertis* reversed, acknowledged that the elements of the circuit's colloquy requirement "were tailored to the federal system and could not be applied as written when considering a habeas petition

---

[8] Namely, "(1) that a jury is composed of twelve members of the community, (2) that the defendant may participate in the selection of jurors, (3) that the verdict of the jury must be unanimous, and (4) that if the defendant waives a jury trial, the judge alone will determine guilt or innocence." *Id.* at 1178 (citing *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981)).

from a state prisoner." *Id*. at 1178. Recognizing that it "might be wise for states to require that criminal defendants be informed" of the elements of a jury trial, the Seventh Circuit held that "awareness of the two jury attributes at issue here . . . is not constitutionally required for a knowing and intelligent jury waiver." *Id.* It ultimately upheld the jury waiver, noting that the defendant "understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Id*. at 1180. In Scott's case, it was not objectively unreasonable for the state court to decide that he understood the choice confronting him and validly waived the right.

Additionally, neither this court nor the Supreme Court has defined fact-specific constitutional minima for a valid jury waiver, found a jury waiver insufficient in a situation analogous to Scott's, or required a set colloquy before a jury waiver can be accepted. In *United States v. Igbinosun*, this court held that, where a federal defendant executed the written waiver required under FEDERAL RULE OF CRIMINAL PROCEDURE 23(a), she could not overcome the presumption that her waiver was knowing and intelligent by showing that the trial judge "did not inform her that a jury is comprised of twelve individuals, that she could take part in jury selection, and that the jury verdict must be unanimous." 528 F.3d 387, 390 (5th Cir. 2008). Indeed, where a written waiver is executed, we have held that "it is not necessary that the district court orally examine the defendant to determine if the [written] waiver was intelligently made." *United States v. Gordon*, 712 F.2d 110, 115 (5th Cir. 1983).

*Igbinosun* emphasized that "the better practice" would be for district courts to engage in a colloquy about the function of a jury and the difference between a bench and jury trial, and cited cases from a number of other circuits that "strongly suggest" the same. 528 F.3d at 390 n.4. Rather than support

No. 08-30631

Scott's position, this undercuts it: the "better practice" implies a preference, not a requirement, and thus cannot be said to constitute a constitutional minimum.

Finally, Scott cites several Louisiana cases in support of his argument. The two cited cases in which the state court found a jury waiver invalid involved a defense counsel waiver of the right, not a personal waiver, as in Scott's case. *See State v. Onstead*, 922 So. 2d 622 (La. App. Ct. 2006); *State v. Lokey*, 889 So. 2d 1151 (La. Ct. App. 2004). Other Louisiana cases have found that waivers similar to the one Scott gave were knowing and intelligent. *See State v. Lee*, 826 So. 2d 616, 622 (La. Ct. App. 2002); *State v. Long*, 408 So. 2d 1221, 1228-29 (La. 1982).

This court has "no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of federal law is erroneous or incorrect." *Martinez v. Dretke*, 404 F.3d 878, 884 (5th Cir. 2005) (quotation and alteration omitted). Here, the state court found that Scott's waiver did not offend the Constitution, and thus that it was voluntary, knowing, and intelligent. The minimum factual threshold for a knowing and intelligent personal waiver of the right to a jury trial is an open question when a defendant voices his preference for a bench trial in person. Thus, AEDPA decides the issue: we cannot say that the state court's decision here was an objectively unreasonable application of clearly established federal law.

## CONCLUSION

The district court's dismissal of Scott's habeas corpus petition is AFFIRMED.